The People, ex rel., v. Weston, Auditor.

THE PEOPLE OF THE STATE OF NEBRASKA, EX REL., C. H. GERE, AND OTHERS, PLAINTIFFS IN ERROR, v. J. B. WESTON, STATE AUDITOR, DEFENDANT IN ERROR.

**Practice**: DEMURRER. A party who stands upon his general demurrer to a pleading, thereby admits the material facts averred, and must take all the consequences which result from such admission.

**Construction of statutes.** To ascertain the intent of the legislature is the cardinal rule in the construction of statutes.

———: ———. The act of February 27, 1873, appropriating a sum sufficient to defray the expense of printing and binding the General Statutes of 1873, in accordance with the terms and provisions of an act providing for the publication of said Statutes, approved February 18, 1873, *does not by implication repeal* the latter act, nor any of the provisions of the general law regulating the public printing of the state. These are statutes *in pari materia*, and being construed together disclose that it was simply the intention of the legislature to allow the contractors partial payments during the progress of printing the General Statutes, the accounts therefor being audited and paid as provided by the act of June 18, 1867, for the payment of state printing.

THIS was an application for a mandamus brought in the district court of Lancaster county. The defendant had judgment, and the relators brought the cause here by petition in error.

The opinion states the case, except that portion of the petition of the relators which contains the contract under which the relators were executing the public printing, and that portion of the defendant's answer which sets up the mode of computation pursued by the auditing board, of which the defendant was a member. These facts, however, are fully set forth in the previous case where the contract under which the relators claimed compensation, is construed, and decision rendered in favor of the method of computation pursued by the auditing board.

*Seth Robinson*, for plaintiffs in error.

I.   Has the whole or at least the latter clause of section

three of the act, entitled, " an act making appropriations for the current expenses of the years 1873 and 1874 " any force and validity? No objection to the validity of the section can be effectual which does not rest on some constitutional ground, but the only provisions of the constitution which can be held to affect the section in question, are contained in sections 19 and 30, article II, legislative. The objection that the section of the act violates either of these sections of the constitution, cannot be maintained.

*First.* Every act making appropriations for expenses to be incurred or services to be performed in future, the amounts whereof, as is generally the case, are or may be at all contingent or dependent on circumstances, must either provide a mode of determining the amount to be paid, or, what in effect is the same thing, must leave that business to the discretion of some auditing officer. And this provision of the constitution is to be construed liberally so long as the title of the act is not obviously made a cover for legislation incongruous in itself. *Cooley, Const. Lim.,* 144–146, *and cases cited. People v. Mahany,* 13 *Mich.,* 495. *Morford v. Unger,* 8 *Iowa,* 82. *Whiting v. Mt. Pleasant,* 11 *Iowa,* 482. *State v. Bowers,* 14 *Ind.,* 195. *State v. County Judge,* 2 *Iowa,* 280. *Indiana Central R. R. Co. v. Potts,* 7 *Ind.,* 684. *Brewster v. Syracuse,* 19 *N. Y.,* 116. *Supervisors, etc., v. People,* 25 *Ill.,* 181. *Fireman's Association v. Lounsbury,* 21 *Ill.,* 511. *Hall v. Bunte,* 20 *Ind.,* 304. *Walker v. Dunham,* 17 *Ind.,* 483. *State v. Board of Com's,* 26 *Ind,* 522. *Underwood v. McDuffie,* 15 *Mich.,* 361.

*Second.* The expense of printing the General Statutes of the state comes as fairly within the meaning of *current expenses* as that of printing the statutes of a particular session. It is an expense which the legislature, whose decision is final, have adjudged it necessary or expedient to incur.

*Third.* That the latter clause of this section does by implication repeal a portion of section 6 of the act, approved February 18th, 1873, above cited, is quite true. If that repeal had been by express words and the intention to repeal indicated in the title, there could be no question as to its validity. *Cooley, Const. Lim.*, 145. *Gabbart v. Railroad Co.*, 11 *Ind.*, 365. *Conner v. Mayor, etc., of N. Y.*, 5 *N. Y.*, 285.

But if the repeal be valid when done in express words, when the intention to do so is expressed in the title, it is equally valid when done by implication, and when no such intention is expressed in the title. For, if the repeal be a distinct subject, to express it in the title would not make it valid, but the whole act would be void; if it be not a distinct subject, it is not necessary to express it in the title, in order to make it valid. *Sedg. Stat. Const. Law*, 125. *Cooley, Const. Lim.*, 152. *Vide also authorities above cited.*

*Fourth.* If this repeal were of the entire printing act, the case would be different. But it is not; it is only of that portion which relates to the appropriation to pay for this work, and the manner of its disbursement.

*Fifth.* If the section be void, as in violation of section 19, legislative article, then each of the several subjects above named would require a separate act. But the fact is, every law is a repeal by implication of all existing laws, so far as they are, in their provisions, in any respect inconsistent with the new enactment. And legislation on this theory is impossible. *Sedg. Stat. Const. Law*, 125.

II.   When a doubtful provision of statutory law is presented for the consideration of a court, there are three cardinal tests which may be applied to it, in order to ascertain the legislative intent: *First.* The inspection of the statute itself. *Second.* The comparison

of acts *in pari materia.* *Third.* The equity of the statute.

1. But be it observed that these rules are never to be resorted to for the purpose of *raising,* but only for the purpose of *resolving,* a doubt. Where the legislative intent is clear, the court has no business with the motive of the legislator, the policy of the act, or the probable consequences of enforcing it. *Sedg. Stat. Law,* 229, 242, *et seq. Bosley v. Mattingly,* 14 *B. Mon.,* 89. *Case v. Wildridge,* 4 *Ind.,* 51.

2. If the construction contended for by the defendant be adopted, the latter clause of the section under consideration is nullified; but if that contended for by the relators be adopted, the provisions of all the several acts concerning public printing, will be allowed to have some force and effect. For this construction harmonizes them all to hold that the secretary of state is to make progressive estimates, 75 *per cent.* of which is to be paid from time to time, and that on the final settlement the secretary of state, auditor, and treasurer, shall examine, audit and certify the accounts; and the cardinal rule in applying any test of interpretation is, that the provisions of any act, or any number of acts, are to be harmonized together and so construed as to give some effect to every part. *Sedg. Stat. Law,* 237, 247–251. *Att'y Gen'l v. Detroit,* 2 *Mich.,* 138. *Board of Comm'rs v. Cutler,* 6 *Ind.,* 354. *McMahon v. Chicago R. R. Co.,* 5 *Id.,* 413. *McCartee v. Orphan Asylum,* 9 *Cow.,* 437.

3. Being a special enactment, containing provisions inconsistent with any prior general law, it must be taken as a repeal of such law *pro tanto. Jersey City v. Jersey City R. R. Co.,* 20 *N. J. Eq.,* 360. *Ex parte Smith,* 40 *Cal.,* 419. *Rich v. Keyser,* 54 *.Penn. State,* 89.

4. The rule that repeals by implication are not favored in law, is a rule of interpretation, and has no

application where the legislative intent is clear, and the acts plainly inconsistent with each other. It is as much the duty of a court to respect a repeal by implication as one in express words, and no case can be found to the contrary. *Sedg. Stat. Law*, 124, *and cases cited.* *Brown v. McMillan*, 7 *M. & W.*, 196.

III. If the section in question is allowed to stand, the return of the defendant is wholly insufficient. His duty is clear, and it is for the performance of that duty alone he is held responsible. He cannot claim to champion the interests of the state, or sit in judgment upon the action of a co-ordinate branch of the executive department. Had he alleged in his return fraud and collusion between the relators and the secretary of state, it would have been equally insufficient. For it is none of his business. *Danly v. Whitely*, 14 *Ark.*, 687.

*J. R. Webster, Attorney General,* (with whom was also *J. C. Cowin,*) for the defendant in error.

I. Fraud vitiates all proceedings and transactions into which it enters, and were the secretary of state the sole auditing officer, the auditor would be justified in refusing payment. The case of *Danly v. Whitely, in* 14 *Ark.*, to the contrary, ought not to be accepted as a good authority, although in that case the secretary of state was apparently the sole auditing officer. See case as cited in *Moses on Mandamus*, 96. 2 *Kent's Com.*, *483, note b. Jones v. Emery*, 40 *N. H.*, 348, 350. *Van Meter v. Jones*, 1 *Green, N. J.*, *Ch.* 520. *Goodhue v. Berrien*, 2 *Sandf., Ch.* 631. *State ex rel., etc., v. Leak*, 5 *Ind.*, 359. *State ex rel., etc., v. Marston*, 6 *Kan.*, 524.

II. The respondent is one of the board as well for auditing the accounts for printing of the General Statutes as for other state printing, unless former legislation

relating to auditing of claims for state printing is repealed, as regards the publication of the General Statutes, by the third section of the appropriation bill of February 27, 1873.

Section 6, act of February 18, 1873, to provide for publication of the General Statutes.

Section 20, act of June 18, 1867, to provide for state printing, pp. 1086 and 520 General Statutes.

But,—

*First.* Such repeal can not be intended by the third section of the appropriation bill above cited. Repeals by implication are not favored. The provisions of the section are not inconsistent with former legislation for the auditing of state printing. *State ex rel., etc., v. Rackley,* 2 *Blackf.,* 249. *Pearce v. Atwood,* 13 *Mass.,* 324, 344. *Looker v. Brookline,* 13 *Pick.,* 343, 348. *Hirn v. State,* 1 *O. St.,* 15, 21. *Kearney v. Buttels, et al., Ib.,* 362, 367. *Town of Ottawa v. LaSalle,* 12 *Ill.,* 339.

*Second.* Such construction is not necessary to effect the object of the provision, its apparent object and purpose being for the financial relief of the contractor by allowing partial payments as the work progresses. *State ex rel., &c., v. Wright,* 17 *O.,* 32. *Burgett v. Burgett,* 1 *Ham.,* 469, 470. *Thayer v. Dudley,* 3 *Mass.,* 296, 298. *Holbrook v. Holbrook,* 1 *Pick.,* 248, 254. *Mendon v. The County, etc.,* 10 *Pick.,* 235, 242.

*Third.* The acts of February 18, 1873, and February 27, 1873, so far as they relate to the payment of bills for printing the General Statutes, were passed at the same session of the legislature, and must be held to be *in pari materia,* and must receive a construction that will give effect to each if possible. *The State ex rel., v. Rackley,* 2. *Blackf.,* 249. *Church v. Crocker,* 3 *Mass.,* 17, 21.

III. The auditor can draw warrants only upon specific appropriations made by law. Aside from his duty as

one of the auditing board of printing, it is his duty to ascertain the amount of the appropriation, and not to exceed it. The appropriation is specific in purpose, but not in amount. It is alleged and believed by respondent to be $13,067.47, and no more. It is so admitted by the demurrer. No more than seventy-five per centum of that amount can be drawn before completion of the work. *Sec.* 1, *Art. V, Const. Neb. Sec.* 3, *appro. act,* Feb. 27, 1873, *Local Laws,* 41. *State ex rel., etc., v. Wright,* 17 *O.,* 32, 33. *The People ex rel., v. Burrows,* 27 *Barb.,* 89, 93.

IV. The right of the relators must be clear, or the writ will not issue. It is the duty of the auditor not to exceed the amount of the appropriation. He cannot be required to do an unlawful act. Were the respondent not one of the auditing board, and were there a difference of opinion between him and the competent auditing authority as to the amount of the appropriation, mandamus would not issue until the amount of the appropriation had been clearly ascertained and fixed, and the rights of the relators were clear. *Sec.* 1, *Art. V, Const. Nebraska. State ex rel., etc., v. Wright,* 17 *O.,* 32. *The People ex rel., etc., v. Burrows,* 27 *Barb.,* 89, 93. *The Board ex rel., etc., v. Grant,* 9 *S. & M.,* 77, 89. *Swan, Auditor, etc., v. Work,* 24 *Miss.,* 439, 444. *Fitch v. McDiarmid,* 26 *Ark.,* 482, 490. *The People v. Forquer, Breese,* 104, 114.

GANTT, J.

The relators, in substance, say that in December, 1872, they entered into a contract with the proper officers of the state to do the state printing; that a part of the work was the printing of five thousand volumes of the General Statutes, and that by an act approved February 27, 1873, as this work progressed, the secretary of state certified to

the auditor of state an estimate of the value of the work accomplished; and the latter issued warrants to them for seventy-five per cent. of the value thereof; but that on the twenty-second day of September, 1873, the secretary made an estimate of work finished up to that time, in addition to all previous estimates and certified the same to the auditor, and that they demanded the issuance of a warrant for seventy-five per cent. of the amount thereof, but that the auditor refused to issue such warrant, on the ground that in his opinion such estimate, added to those already made for which warrants had been issued, exceeded the amount of the contract price for publishing such General Statutes; and they prayed that a mandamus issue against the auditor, etc. An alternative mandamus was allowed.

The answer of the defendant is very long, and among other allegations, he avers that the auditing and settlement of the accounts for the publication of the General Statutes, was to be made by a board consisting of the state treasurer, the secretary of state, and state auditor; that the secretary of state pursued a mode of computation utterly at variance with the correct and just mode of computation, and the mode adopted by the board, and that the effect of his mode of computation was to double the quantity of paper, making each ream of paper, weighing sixty pounds, to consist of forty quires of one and one-half pounds per quire, and that by such estimates he certified to the auditor the work done on the publication of the General Statutes. And again, that the estimates made by the secretary were greatly in excess of the full contract price of the printing of the General Statutes, and that the secretary of state, and the relators, well knew that the amount already certified was the full contract price of said work and more. And again, that the certificate of work done by the relators, *was made by the secretary of the state through sheer indifference and reckless*

*disregard of the public interests, or utter imbecility of judgment or was by him made fraudulently and corruptly colluding and conniving with the relators, with a view to, and for the collusive, corrupt, and fraudulent purpose of obtaining warrants in excess of the amount to which the said relators would be fully entitled for the publication of said General Statutes.*  And again, that the estimates of the value of work, certified by the secretary, were manifestly erroneous and exaggerated estimates of work accomplished on the publication of the Statutes.

To this answer the plaintiffs interposed a general demurrer; and upon a hearing thereof, before Mr. Chief Justice Lake sitting in the district court for Lancaster county, the demurrer was overruled, and plaintiffs standing on their demurrer the cause was dismissed at their costs.

The plaintiffs now complain that the district court erred:

1. In overruling the demurrer to defendants answer. 2. In ruling that the facts set up in said answer and return constitute a defense to the writ of relators.  3. In giving judgment for the defendant and not for the plaintiffs.

The demurrer admits the truth of all facts alleged in the answer, which are material to the case.  The demurrer, therefore, admits as *facts*, that the estimates made by John J. Gosper, Secretary of State, of the value of the work as it progressed, was manifestly erroneous, exaggerated, and greatly in excess of the full contract price of the entire work to be performed, and the secretary of state and relators well knew this fact; that the certificate was made by the secretary *through a reckless disregard for the public interests, or utter imbecility of judgment, or fraudulently and corruptly by collusion with the relators with a view to obtain warrants in excess of the*

*amount to which the relators were entitled for the publication of the Statutes.*

These allegations, as well as many others set forth in the answer, are material to the case, and if they are true they show a gross violation of duty on the part of the certifying officer. And again, if these facts be true, and under the pleadings they must be taken as true by the court, they constitute a full and complete defense to the writ, and application of the relators, for besides the allegations of fraud and collusion, they show clearly that not only estimates in excess of seventy-five per cent. of the whole contract price, has already been certified to the auditor, but that the estimates already made exceed the full contract price of the work performed.

To draw warrants for an amount exceeding seventy-five per cent. of the work accomplished, is a direct violation of the law, and a fraud upon the state; and surely, it will not be seriously contended that the court, by its process, shall be made the instrument of consummating such a fraud upon the paying party. It must be understood that a party who stands upon his general demurrer to a pleading, thereby admitting the material facts to which he demurs, must take all the consequences which necessarily result from his admissions. This is a principle of law in respect to pleading which is too long, and well settled, to require authority in support of it.

But it is contended on the part of the relators, that by section three of the act of February 27, 1873, entitled "an act making appropriations for the current expenses of the years 1873 and 1874," all prior acts relating to filing, auditing, and payment of accounts for public printing, were repealed by implication, in respect to the printing and payment of the General Statutes; and as a construction of this section was earnestly pressed upon the court, I will now examine the question.

This section appropriates a sum sufficient to defray the

expense of printing and binding the General Statutes "in accordance with the *terms* and provisions of an act " providing for the ·publication of the General Statutes, approved February 18, 1873.   This language seems not only to indicate clearly the intent of the legislature, but expressly declares that the expenses must be paid "*in accordance with the terms and provisions*" of the former act.

The act of February 18, 1873, to which reference is made in the act under consideration, provides that the contractors for public printing shall print and deliver to the secretary of state five thousand volumes of said General Statutes, "and the accounts therefor *shall be audited and paid as provided by law for the payment of state printing.*"   *General Statutes*, 1084, *Sec.* 6.

Now the law here referred to, providing for state printing, is the act of June 18, 1867.   *General Statutes*, 515. Section eighteen of that act provides the time when, and the manner in which the state printer shall file his accounts; and section twenty declares that the secretary of state, auditor and treasurer, shall audit and examine such accounts, and provides specially how such examination of accounts shall be made.   This is the only act in force, which confers all the necessary powers and defines the duties of an auditing board of the accounts for state printing.

These several acts must be taken as statutes *in pari materia,* and construed together as one law.   This is a well settled rule of law in respect to statutes relating to the same subject matter.

It is, however, contended that the latter clause of the act of February 27, by implication repeals that of February 18, 1873, and all of the act of June 18, 1867, so far as they relate to the auditing and payment of the accounts for printing the General Statutes.

This clause provides that as the work progresses, upon

the application of the contractors, the secretary of state shall certify to the auditor the value of the work accomplished at the time, and that upon such certified estimates the auditor shall issue to the contractor his warrant on the treasurer, "not exceeding seventy-five per cent. of the work so certified, the balance to be paid upon completion of the work." This clause must be construed in connection with the immediately preceding one, which declares that these expenses must be paid in accordance with "the terms and provisions" of the act of February, 1873, and hence, the "accounts shall be audited and paid as provided by law for the payment of state printing."

In this view of the section, it is, I think, plainly discovered that it was the intention of the legislature to simply allow the contractors *partial payments* as the work progressed, and that upon the certified estimates of this work by the secretary of state, the auditor should not draw his warrant on the treasurer to exceed seventy-five per cent. of the amount of such estimates.

In the case of the *Town of Ottawa v. La Salle*, 12 *Ill.*, 341, it is said that "it is a maxim in the construction of statutes that the law does not favor a repeal by implication. The earliest statute continues in force unless the two are clearly inconsistent with, and repugnant to each other, or unless in the latest statute some express notice is taken of the former, plainly indicating an intention to repeal it. And when two acts are simply repugnant, they should, if possible, be so construed, that the latter may not operate as a repeal of the former by implication." *Dwarris on Statutes*, 674. *Bac. Abr. Tit. Stat. D. Bowen v. Lease*, 5 *Hill*, 221. *Planters' Bank v. The State of Mississippi*, 6 *Smed & M.*, 628. *Hirn v. The State of Ohio*, 1 *Ohio State*, 21.

And again it is a rule of interpretation of statutes, that the law is the best expositor of itself, that every part of it is to be taken into view for the purpose of discovering

the mind of the law giver, that the details of one part may contain regulations and subject matter, restricting the intent of general expressions or words in another part of the same law, and hence, that every part of the law is to be considered, and the legislative intent is to be extracted from the whole of it.

Now in construing these several acts together as statutes *in pari materia*, by the test of these rules of interpretation, we think they may stand together as one complete, harmonious system—one consistent law, and this construction certainly gives effect to the manifest intention of the legislature. The act of February 27, allows partial payments to the contractor as the work progresses, but provides that the expense of printing and binding shall be defrayed "in accordance with the terms and provisions" of the act of February 18, 1873, which provides that the accounts for printing and binding shall be audited and paid, as provided by law for the payment of state printing, and the act of June 18, 1867, is the only general law providing for such payment.

We are of the opinion that the demurrer was properly overruled, and that in the finding and judgment of the district court, in favor of the defendant, there is no error, and its judgment must be affirmed.

JUDGMENT AFFIRMED.

Mr. JUSTICE MAXWELL concurs.