Spear, J.
The contention of the plaintiff is that there was no power in the township trustees to acquire the lands for cemetery purposes within two hundred yards of plaintiff’s dwelling-house without his consent, and that the establishment of a cemetery as contemplated would be unlawful, and hence a nuisance per se, and that, this appearing, the plaintiff was entitled to an injunction; while the defendant claims that the question having been submitted to the voters, as required by section 1465, Revised Statutes, and a majority voting in favor of the project, the purchase was lawful; that the use proposed was authorized by statute, and that plaintiff could not have relief without showing, by proof, that the cemetery, as proposed, would work special damage to his property. In overruling the demurrer to the answer, the circuit court held the law as claimed by the defendants.
In our judgment the determination of the questions depend upon a proper construction of section 1464, Revised Statutes. That section reads as follows:
“ Sec. 1464. The trustees may accept a conveyance of, or purchase, and inclose, improve, and protect such lands, in one or more places within the township, as they deem necessary and proper for cemetery purposes ; and if suitable lands cannot be procured by contract on reasonable terms, they may appropriate lands therefor, not exceeding ten acres, by proceedings in accordance with the provisions of law regulating the appropriation of private property by municipal corporations ; but no such appropriation shall be made, until the court is satisfied that such lands cannot be obtained by contract on reasonable terms, nor shall any lands be so ap *674 propriated on which there is any house, barn, stable, or other building, or any orchard, nursery, medicinal, or mineral spring, or well yielding oil or salt water ; nor shall anjr land be so appropriated within two hundred yards of a dwelling-house.”
As the foregoing section gives all the authority possessed by township trustees to obtain land for cemetery purposes, we must look to it to ascertain the extent of that authority, and the limitations upon it. It will be specially noted, that, by the language of the last clause, no lands can be appropriated by the trustees for the purpose of a cemetery within two hundred yards of a dwelling-house. May the trustees in any way lawfully acquire land for that use within that distance from a dwelling-house without the consent of the owner thereof ? This raises the question as to what import is to be given to the words “so appropriated” as last, used in the section.
The manifest purpose of the act is to provide a way by which a public necessity in every inhabited township may be supplied, and at the same time no injury result to the inhabitants by too close proximity to their dwelling. The design of the clause in question is to guard the comfort, the health, and the lives of the people. Per se, a cemetery is not a nuisance, but this act carries the implication that, in the judgment of its framers, the locating of a cemetery, nearer than two hundred yards from a dwelling-house, is a thing to be prohibited. The tendency to injure the value of the property, and to impair the health of the inmates, if placed too near, is matter of common knowledge. Not that, in all cases and under all circumstances, it would necessarily have that result, but the extreme probability of such effect was a sufficient cause to induce the legislature to enact the prohibition. No question is made but that the section absolutely prohibits the establishment of a cemetery within the limit where an appropriation proceeding has to be resorted to in order to obtain the land. The contention in support of the judgment below, is, that if the land can be purchased then the location may be made nearer than the distance named. If this is a correct interpretation of the act, the result is a singular one. *675 We have the legislature, in one clause of the section, providing that the township may not obtain land for a cemetery within the prescribed distance, and in another clause providing that it may do so, and yet there is no perceptible reason for a difference. The object of the prohibition, as we have seen, is to protect the owner of a dwelling-house and his property from the probable effect of a location of a cemetery too near the property, and yet, while two modes of acquiring land are provided for, one of them, if resorted to, will afford that protection, and the other will absolutely defeat it. No possible harm could come to the owner of such dwelling-house from the acquisition of land by an appropriation proceeding, which would not follow the acquisition by purchase, and the construction claimed, to every intent, defeats the object of the clause referred to. The legislature could never have intended this. That body would not knowingly provide against an evil if brought about in one way, and at the same time, and by the same section, permit it to be accomplished in another way, when the objection did not lie to the manner of doing the thing, but to the result after it was done. A construction producing so inconsistent a result, should not be adopted if any other is practicable.
Nor, as it seems to us, is a construction which will give effect to the manifest intent of the legislature, difficult. The entire strength of the defendant’s ease rests upon the claim that the term “ any lands be so appropriated,” in the last clause, refers only to lands which may have been acquired by an appropriation proceeding, which is its evident meaning in the sentence preceding. A literal first blush interpretation would, perhaps, warrant that conclusion, but we are “ bound not to stick in the mere letter of a law, but rather seek for its reason and spirit, in the mischief that required a remedy and the general scope of the legislation designed to effect it.” Tracy v. Card, 2 Ohio St. 431.
We are, it is true, to gather the intent from the language used, but we are also to ascertain that intent from a proper interpretation of the language, though this may require a departure from the literal meaning of words. “ A strict and *676 literal interpretation is not always to be adhered to, and where the ease is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter.” People v. Lacombe, 99 N. Y. 49. The true meaning is to be arrived at by taking a view of the whole act, so as to understand its real object. If the apparent meaning of the words, at first blush, would lead to a manifest contradiction of the purpose of the enactment, it is the duty of the court to seek some. other meaning which will be in accord with that purpose. It is said by Brinkerhoee, J., in Terrill v. Auchauer, 14 Ohio St. 87: “ if the statute be fairly susceptible of two different constructions, we are at liberty to choose that one which, while it remedies the mischief aimed at, avoids the absurd or unjust consequences which would flow from the other.”
The ascertainment of the true intention, says Mr. Endlich in his work on the Interpretation of Statutes, sec. 295, “ is the cardinal rule, or rather the end and object, of all construction ; and where the real design of the legislature in ordaining a statute, although it be not precisely expressed, is yet plainly perceivable, or ascertained with reasonable certainty, the language of the statute must be given such a construction as will Garry that design into effect, even though, in so doing, the exact letter of the law be sacrificed, or though the. construction be, indeed, contrary to the letter.” He cites in support People v. Weston, 3 Neb. 312; Hunt v. Railroad Co., 112 Ind. 69; Brown v. Barry, 3 Dal. 365; Minor v. Michigan Bank, 1 Pet. 46, and a number of other cases, and we do not doubt that the text properly states the rule on the subject. This same author (sec. 387) remarks that as a general rule, it is reasonable to presume that the same meaning is intended for the same expression, in every part of the act, and the interpreter is bound, in general, not to assign different meanings to the same words on the ground of a supposed intention of the legislature, but adds that, “ the presumption is not of much weight,” and cites to this last point U. S. v. Palmer, 3 Wheat. 631; R. v. Lewis, Dears, C. *677 & B. 182; R. v. Allen, L. R., 1 C. C. 367, and Bones v. Booth, 2 W. Bl. 1226.
There is no question but that the section treats of appropriation proceedings, and has in contemplation that lands may be acquired in that way, nor that the purpose of the inhibition against the appropriation of lands on which there is any house, barn, etc., is to make it impossible for the trustees to compel an owner to part with such property, against his will, even though a compensation should in the same proceeding be awarded. Why is it not reasonable to presume that, with like regard for the rights of the citizen, the purpose of the clause following is to make it impossible for the trustees to indict damage upon the owner of a dwelling-house by a location within the prescribed distance ?
It follows that if a meaning other than one implying a reference to lands acquired by an appropriation proceeding, one which will be in accord with the manifest purpose of the act, can be given to the term “ be so appropriated,” in the last clause of the act, the court is not only at liberty to adopt it, but it is its duty to do so. One dednition of the term “ to appropriate ” is to consign to some particular purpose or use; to set apart for some use. In this sense, therefore, “ to be appropriated ” is to be devoted to some purpose or use, and we think it not violative of the canons of construction, to give to the term that meaning in this connection. The clause under this interpretation means the same as though it had been written: Nor shall any land be devoted to cemetery purposes lying within two hundred yards of a dwelling-house. This construction makes the several parts of the law consistent with each other, is in the line of the object to be subserved, and suppresses the mischief which the legislature evidently had in mind in passing the act, while the construction claimed by the defendants renders the section self-contradictory, and results in a nullidcation of the policy of the enactment.
It is not questioned that the owner of a dwelling-house may sell to the trustees lands for cemetery purposes within two hundred yards of his house, and thus estop himself *678 from claiming the protection of the law, bnt the owner of land desired for that purpose, cannot, by selling, impair the right of his neighbor to that protection.
If our conclusion as to the proper construction of the clause in question is correct, it follows that the plaintiff is entitled to a- perpetual injunction. The law does not permit the injurious act to be done, and leave the owner of the dwelling-house to an award of damages ; it prohibits the injurious act itself. And upon showing that he is of the class coming within the protection of the law, the plaintiff is entitled to have the prohibitory provision enforced by the court.
We are not called upon to determine what the rights of the parties would have been had the facts shown that the portion of the grounds to be devoted to burial purposes is two hundred yards distant from the plaintiff’s dwelling-house. No such case is made. The answer itself avers that the part of the grounds devoted to burial purposes is distant from the house one hundred and seventy feet, and there is nothing in the record to show that any portion of the land purchased is farther away than two hundred yards.
Judgment of the circuit court reversed, demurrer to answer sustained, and judgment for plaintiff.