## STATE ex rel. WISE vs. BUTTON.

*Construction of statutes. — Act erecting territory into a city does not become fully operative until organization of city government.*

1. Where an act, approved March 6, 1868, to incorporate the city of River Falls, declared that a certain part of the *town* of that name should constitute such city, and that an election for municipal officers should be held on the first Monday of April following, upon a notice of at least two weeks; but said act was not published until April 1st, and no election was had nor organization of a city government effected: *Held*, that the district so designated continued to be a part of the *town* of River Falls, and its inhabitants were entitled to vote at the poll of said town at the next subsequent fall election.
2. Declarations in said act, that from and after said first Monday of April the designated district should constitute the city of River Falls, and the connection between that district and the town should be dissolved for all town purposes, must be construed, with reference to the whole scope of the act, as intended to become fully operative only when the city organization should be effected.

This was an action commenced in this court, under the statute, to determine the right of the respondent to the office of district attorney of Pierce county. The cause was sent to the circuit court for that county, for a trial of the issues of fact. The jury found certain facts,

the substance of which is stated in the opinion, *infra.* The relator thereupon moved for judgment in his favor.

*P. V. Wise,* relator, in person, with the *Attorney General* and *S. U. Pinney,* of counsel.

*J. S. White,* with whom was *P. L. Spooner,* of counsel, for respondent.

PAINE J.    Chapter 436, as printed among the private laws of 1868, provided that from and after the first Monday of April, 1868, a certain part of the town of River Falls should constitute a part of the city of River Falls, which was thereby incorporated.    The act provided for an election of municipal officers necessary to an organization, on the said first Monday, upon a notice of at least two weeks.    Although approved on the 6th of March, it was not published until the first of April. There was no election held under it on the first Monday of April, and consequently no organization of the city ; and there was none prior to the general election in the fall of that year.    At this election enough of the voters (inhabiting that part of the town which had been set off for the city), to change the result voted for the respondent at the poll of the town of River Falls.    And the question presented on the motion is, whether those votes were illegal.    It is not claimed that any of these persons were not electors.    The only ground of illegality relied on is, that the act in question had, by its own force, so completely severed the inhabitants of this district from the town, that their votes at the town poll were necessarily illegal, without regard to the question whether there was ever any organization of the city under the act or not.

An argument in favor of such a position may be made upon a literal construction of the first section of the first chapter, and the tenth section of the tenth chapter of the act.    The first declares, without any qualification, that after said first Monday of April the designated district should constitute the city of River

Falls ; and the last, that after that day the connection between that district and the town should be dissolved for all town purposes. But, notwithstanding the apparently positive form of the provisions of these sections, we have come to the conclusion, from the nature of the subject-matter and the general character and object of acts of this class, that although they become operative as authority for organizing in accordance with their provisions when enacted and published, yet they do not take effect, so as to divest all the relations existing between the inhabitants of such districts and the municipal corporations to which they formerly belonged, until there is the organization necessary to bring the new municipality into being. We do not say that it would not be competent for the legislature to work such a complete change by the mere force of the law itself, where that intention was clear, but that, upon a fair consideration of the whole act and of its general objects, it is reasonable to say that the legislature intended the new organization, so far as its limits extended, as a substitute for the old ; and that a complete creation of the new was therefore designed to be a condition to the complete destruction of the relations existing under the old.

The only authority directly in point cited upon either side sustains this view. That is the case of *Haynes v. County of Washington*, 19 Ill. 66. In that case the court say : " Grants of corporate powers for purposes of local municipal government, such as belong to towns and cities, are a delegation of a portion of the general sovereignty of the state, designed to enable the inhabitants of particular localities to establish and maintain police regulations, and to advance their common prosperity. A charter, or act of incorporation, is but evidence of the powers delegated, and which powers remain dormant, or in abeyance, until, in the mode pointed out in the charter, the inhabitants for whose benefit those powers are

granted, bring them into life and exercise by an organization of the local government.   Here the law incorporating the town, in authorizing the inhabitants to form, by the means provided, a local government, was evidently intended for the benefit of the inhabitants, and is presumed to have been made at their instance, and not upon the consideration that the common good and policy of the state demanded the establishment of such local government, and the separation of the particular territory, for such purpose, from the jurisdiction of county authority.   Until an organization by an election and qualification of the number of persons, being the several integral parts of the corporation, and forming the political body provided for in the laws, there could be in being no municipal corporation or government; and the condition of the inhabitants within the limits named in the law, as to rights and duties, would continue unchanged and unaffected by the law authorizing them in a corporate capacity to exercise municipal powers."

This seems directly applicable to the question here presented.   The votes for the respondent, claimed to have been illegal, were not so ; and the motion of the relator for judgment must be denied, with costs.

*By the Court.* — So ordered.