GEORGE D. FOLLMER, APPELLANT, v. BOARD OF COUNTY COMMISSIONERS OF NUCKOLLS COUNTY, APPELLEE.

1. **Construction of Statutes:** The several parts of an act are to be construed together in order to ascertain the intention of the legislature.

2. ———: As a primary rule the intention of the legislature is to be collected from the words; if the words are not explicit it may be gathered from the occasion and necessity of the law. Words are be to interpreted with reference to the general object and scope of the statute.

3. ———: ROADS AND BRIDGES. Section 16 of the road law requires all contracts for the improvement of roads to be let to the lowest competent bidder, and this includes contracts for the erection and repair of permanent bridges and culverts.

4. ———: ———: POWER OF COUNTY COMMISSIONERS. County commissioners have no authority either personally or by agent to engage in the business of erecting public bridges on the credit of the county. The law defines their power and points out the mode of its exercise, and that mode is exclusive.

5 ———: ———: ———. The words "permanent" and "substantial" are used in section 15 of the act in a descriptive sense, and apply only to such structures as are of a permanent and substantial character, and do not include merely temporary structures or ordinary repairs.

THIS action was brought in the district court of Nuckolls county, upon a petition of the plaintiff, to restrain the defendants from building bridges in that county

without letting the contract for the building of the same to the lowest responsible bidder, and also to enjoin the board from auditing and paying a large number of accounts already accrued in the hiring of hands, and for the purchase of material for the erection of bridges, except where the contract for the same was let to the lowest responsible bidder. A temporary injunction was allowed. By stipulation of the parties the cause was heard before Hon. S. B. Pound, judge of the second judicial district at Lincoln, by whose decree the temporary order of injunction was modified so as to allow the defendants to audit the claims set forth in the petition which had already accrued, and made perpetual to the extent of prohibiting the defendants from building bridges in the future without first advertising for bids and letting the contract to build the same to the lowest responsible bidder. It was also decreed that each party pay one-half of the costs of the action. Plaintiff appeals, and by a further stipulation the cause was heard here upon the original pleadings and proofs.

*Brown, England & Brown* and *H. A. Day*, for appellant.

A board of county commissioners have no authority to incur an obligation on the part of the county, except when they are expressly authorized by law to do so; and when acting under such authority they must act strictly on the conditions under which the authority is conferred. *The Sioux City, &c., R. R. Co. v. Washington Co.*, 3 Neb., 42. Therefore, when the law provides that in building bridges they shall let the contract for erecting the same to the lowest responsible bidder, this is a limitation on their power to contract, and a bridge built by them in disregard of this provision creates no liability againt the county. In other words, a contract made or

liability incurred by the board of county commissioners, in any other manner than that in which they are authorized by law to make or incur it, has no binding force or validity on the county, and is absolutely void. *Zottman v. San Francisco*, 20 Cal., 96. *Murphy v. Napa Co.*, 20 Cal., 497. *Richard v. Warren Co.*, 31 Iowa, 381. *Brady v. The Mayor, &c., of N. Y.*, 16 How. Pr., 432. *Id.*, 20 N. Y., 212. *Ohio, ex rel. Bain v. Yeatman*, 22 O. S., 546. *Kneeland v. The City of Milwaukee*, 18 Wis., 411. *Willis v. Burnham*, 20 Wis., 119. *McEwen v. Gilker*, 38 Ind., 233. *Stewart v. Otoe County*, 2 Neb., 177. Dillon Mun. Corp., Sec. 373. Same, Sec. 381 and note 2. Angel & Ames on Corps., Sec. 253. *Butler v. City of Charleston*, 7 Gray, 12. *Marsh v. Fulton Co.*, 10 Wall., 676. *Thomas v. City of Richmond*, 12 Wall., 349.

It being admitted as a matter of fact, that the accounts, the auditing of which is sought to be enjoined in this action, were incurred by the county commissioners for the erection of bridges without letting the contract at all—it would seem to follow as an irresistible conclusion that these pretended claims ought not be allowed by the board and charged to the county; and that if the board are threatening and intending to audit and allow them, as they admit they are, then certainly this plaintiff ought to have some remedy of which he may avail himself, to prevent his property being made subject to the payment of these unlawful demands. The foregoing proposition is so plainly just that even the defendants will hardly seek to dispute it. But it may be argued by the defendants' counsel, as it was in the court below, that the taxpayers of the county, and the public generally, are using these bridges, and that by using them they have accepted them, and converted them to the use of the public, and that because they have accepted and used them, there is an *implied* obligation on the part of

the county to pay what the bridges are reasonably worth. In reply to this we say: These bridges are in the highway where the public have a right to travel; that the parties who placed them there acted without authority of the law, and were trespassers. To say that a county under such circumstances is liable for the value of these bridges is to hold that a person may place a bridge in the highway, without any authority whatever, and the first time that a person traveling along the highway shall pass over it, the county, however unwillingly, has incurred an obligation for the value of the bridge, which the person placing it there may enforce by an action at law. If this be law, it is within the power of any person to compel the county to assume obligations of this character or abandon the highway. The law never implies an obligation to do that which the party has no power to agree to do. And the commissioners having no authority to build bridges, except in the manner pointed out by law, there can be no implied obligation on the county to pay for bridges built in any other manner; neither can the county commissioners ratify the acts of the parties in erecting these bridges. We have shown that the board have no authority to build bridges as these were built, and it requires no argument to prove that the board cannot ratify what it has no power to authorize.

*H. S. Kaley*, for appellee.

The plaintiff has clear, adequate, and complete remedy at law. The statute gives to any person who shall be aggrieved by the decision of the board of county commissioners, the right of appeal to the district court. If the plaintiff is in a situation to be aggrieved by the allowance of these claims, he is within the clear letter and spirit of the statute, and may have his right of appeal.

This is not only apparent from the very language of the statute, but the courts of sister states having similar provisions in their statutes, and from which ours is borrowed, have repeatedly held that a taxpayer may appeal, not only to determine the amount due, but also to test the legality of the claim. *Harlan v. Carroll*, 13 Ind., 247. *Graham v. Commissioners*, 25 Ind., 233. *State v. Buckels*, 39 Ind., 273–4. *Arthur v. Adams*, 49 Miss., 410. The right to appeal from an inferior tribunal cannot be taken away unless the intention of the legislature to this effect is expressed with unequivocal clearness. Dillon on Mun. Corp., §§ 368, 476. For a court of equity to assume jurisdiction and to summarily dispose of vital questions of law in the face of a statute containing such ample provision for the adjustment of these questions in a common law court, is simply to nullify clear legislative enactments, rob law courts of conceded jurisdiction, and become, by mere assumption, a law unto itself. The pleadings and proofs clearly show that bridges have been constructed, valuable materials furnished, and labor and toil honestly expended by various parties, the plaintiff, in common with other citizens of the county, now enjoying their use and advantages; and yet, with all these just and equitable claims pressing for adjustment before the board of commissioners (and their willingness) to pay, the plaintiff, as the voluntary champion of justice, in behalf of the taxpayers of the county (all of which, according to the proof, silently acquiesced in the construction of these bridges) comes into a court of equity, not for an equitable adjustment of claims, but appealing to the conscience of the chancellor, boldly asks that all compensation be denied these parties because of a supposed mistaken construction of a vague and indefinite statute. A proposition so unconscionable has neither the sanction of reason nor the approval of the courts. 14 Penn. State, 83. 47 Ind., 407. 24 Wis , 39.

MAXWELL, J.

In 1866 the legislature amended section fifteen of the road law so as to permit county commissioners to levy an additional cash tax for bridge purposes, not to exceed five mills on the dollar of the assessed valuation of all taxable property, to be levied and collected as other taxes, which special tax when so collected shall be exclusively applied to building and repairing permanent and substantial bridges and culverts, under the direction of the county commissioners.

Section sixteen provides that: " The county commissioners may let contracts to the lowest competent bidders for the improvement of such roads as may be of general necessity, and pay for the same by orders on the . county treasury, payable out of the county road fund; but no contract shall be entered into for a greater sum than double the amount of money on hand in the county road fund; and every bidder before entering upon any work pursuant to contract, shall give bond to the county, with at least two good and sufficient sureties, in any sum double the amount of the contract; which bond shall be approved by the county commissioners, conditioned for the faithful execution of the contract." General Statutes, 954.

These sections are part of the same act and are to be construed together in order to ascertain the intention of the legislature. " In the exposition of a statute the intention of the legislature may be discovered from different signs. As a primary rule it is to be collected from the words; when the words are not explicit it is to be gathered from the occasion and necessity of the law, the defect in the former law and the designed remedy being the causes which moved the legislature to enact it." Potter's Dwarris on Statutes, 184.

Statutes should be construed according to the natural

and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending their operation. *Waller v. Harris.* 20 Wend., 561-2.

Ambiguous words are to be interpreted by comparing therewith the context of the whole statute, and by considering its reason, spirit, and cause. *State v. Judge,* 12 La. Ann., 777. Sedgwick on Statutory and Constitutional Law, 225.

Words are to be interpreted with reference to the general object and scope of the statute. *State v. Button,* 25 Wis., 109. In the amendment of statutes the intention to change an existing law should clearly appear. *Lee v. Forman,* 3 Metc. (Ky.), 114.

Statutes having similar objects are to be construed alike. Thus the same principles applied in the construction of bankrupt laws are to govern in the case of a statute to prevent frauds by incorporated companies having a similar object in view, namely, an equal distribution of assets among creditors. *People's Bank v. Paterson Savings Bank,* 2 Stockt., 13.

The rule is well settled that the word *may,* where the statute directs the doing of a thing for the sake of justice or the public good is the same as *shall,* and must be so construed. Let us apply these principles to the case at bar. What was the occasion and necessity of the law? Undoubtedly the object was to protect the interests of the public by opening to competition all contracts for the improvement of roads. It is urged with great earnestness that at the most this competition only applies to such portions of roads as require grading, and has no application whatever to contracts for the erection and repair of bridges and culverts. The word "road," as a generic term, includes highway, street, and lane. Public roads and streets are for the use of the public at large, although ordinarily the public acquire only the

use, the fee remaining in the original proprietor or abutter.

The character of the soil of this state and the general absence of obstructions of every kind from its surface are matters of public history. Except in rare instances but little expenditure is necessary for grading in opening new roads. Nearly the entire amount to be expended for the improvement of roads is required for bridges and culverts. Will it be supposed that the legislature intended these lesser contracts for grading to be let to the lowest bidder, while contracts for the erection of bridges and culverts, involving almost the entire expenditure of money at the disposal of the county commissioners for road purposes, may be expended as the commissioners see fit? I think not. At the time the amendment of section fifteen of the road law herein referred to took effect, the statutes provided for a land road tax not to exceed $4.00 on each quarter section of land, one third of which if paid in money was placed at the disposal of the county commissioners. This tax (now repealed) might have been paid in work on the roads, under the direction of the supervisor of the proper road district, in which case no portion of the tax was placed at the disposal of the commissioners. The bridge tax provided for in section fifteen is to be paid in *cash*, and is to be expended exclusively in the construction and repair of permanent bridges and culverts. It is reasonable to suppose that at the time of the passage of this amendment the road taxes paid in work were sufficient to secure the necessary grading for the opening and repair of new roads, no additional taxes being deemed necessary at that time for that purpose, and therefore no contracts for grading were required to be let.

Prior to the passage of the amendment to section fifteen, above referred to, if the entire amount of land road tax in any county was paid in work, then one-

third of said road taxes, which, if paid in money, would have been placed at the disposal of the county commissioners, would not be available for the purpose of erecting permanent bridges and culverts; therefore the necessity for the tax for bridge purposes to be paid in cash. Now.how shall this money, collected for the purpose of erecting and repairing permanent bridges and culverts, be expended? Section sixteen provides that the commissioners may let contracts for the improvement of roads to the lowest competent bidder. Does this provision apply to all contracts for the improvement of roads of whatever character? We think it does.

Public bridges are portions of public roads, and there being no restriction in the statute, all contracts of that kind, including those for the erection and repair of permanent bridges and culverts, must be let to the lowest responsible bidder. The commissioners have authority, on the presentation of the proper petition, to take the necessary steps to locate and open new roads. But they have no authority, either personally or by an agent, to engage in the business of erecting public bridges on the credit of the county. The law defines their power and points out the mode of its exercise, and that mode is exclusive. They have no authority whatever to purchase material and employ workmen by the day or week to construct permanent and substantial bridges and culverts.

The words *permanent* and *substantial* are here used in a *descriptive* sense, and apply only to such structures as are of a permanent and substantial character, and do not include merely temporary structures or ordinary repairs. It is persistently urged that, as a matter of economy, county commissioners can erect bridges and culverts for a sum much less than it is necessary to pay contractors where contracts are let to the lowest bidder. The proposition amounts to this, that county commissioners who

ordinarily know but little about bridge building, can erect such structures for a less sum than those who understand the business—a proposition that need only be stated to show its absurdity.

The principle is well settled in this court that county commissioners can only exercise such powers as are especially granted or are incidentally necessary for the purpose of carrying into effect the powers granted. And in the exercise of these powers they must follow the mode of procedure pointed out by the law. If they fail to do so a court of equity has authority to grant an injunction to restrain them from proceeding illegally under a claim of right. And the court having obtained jurisdiction of the subject matter and the parties may retain the cause to administer complete justice between the parties. The plaintiff could not be presumed to know that the commissioners were about to purchase a large quantity of material for the purpose of erecting bridges; and is not therefore estopped from denying their authority to purchase such material on the the credit of the county. The case differs in many respects from the case of *Clark v. Dayton*, ante page 192, where the court held substantially that a taxpayer having, without objection, permitted a contractor to expend, his money and labor in the erection of a public bridge, could not, after the completion of the same and its acceptance by the county commissioners, maintain an action to restrain the collection of a tax to pay therefor.

The injunction will be dissolved as to all bridges erected by the county commissioners prior to the commencement of this suit, and as to all other matters prayed for in said petition will be made perpetual; the costs of this court to be taxed to defendant.

DECREE ACCORDINGLY.

GANTT, J., concurs.

LAKE, Ch. J., dissented.