WILLIAM DAVENPORT ET AL., RESPONDENTS, *v.* THEODORE H. KLEINSCHMIDT ET AL., APPEL-LANTS.

APPEALS — *Second appeal of questions already decided.* —The case at bar was before the court on a former appeal by the defendants, from an order of the District Court refusing to dissolve an injunction. A decision was rendered against the defendants (6 Mont. 502), and upon the case being remanded to the District Court, an answer was filed, and thereafter, on motion of the plaintiffs, a judgment was rendered on the pleadings against the defendants. They again appealed. *Held,* that the questions involved in the present appeal are identical with those decided on the former appeal, and that the former decision is the law of, and must govern this case.

SAME— *Injunction.* —This case had been decided adversely to the defendants (6 Mont. 502) on their former appeal from an order of the District Court denying a motion to dissolve an injunction. It was remanded to the District Court, and the defendants filed an answer setting forth, among its other allegations, a state of facts which had arisen subsequently to the granting of the injunction. The District Court rendered a judgment on the pleadings against the defendants, and they again appealed to the Supreme Court. *Held,* that even if the point made by the pleading of such a state of facts was important, it could not be considered, because the injunction would have to stand or fall by the state of facts existing at the time it was granted.

*Appeal from the First Judicial District, Lewis and Clarke County.*

STATEMENT.

The history of this case is about as follows: The city council of the city of Helena enacted an ordinance, No. 93, approved November 22, 1886, by the mayor, by which was granted to George F. Woolston a franchise to lay water mains within the limits of the city of Helena, and to construct and maintain a system of water-works for the purpose of supplying the city and its inhabitants with water for domestic, manufacturing, and other purposes. It was provided in and by said ordinance that the city should take water from this system, for fire and sewerage purposes, for the period of twenty years, thus giving defendant Woolston and his successors and assigns an exclusive right of furnishing to the city water for fire and sewerage purposes, for twenty years, at a specified sum for each year. William Davenport, William C. Child, Thomas C. Power, and Robert S. Hale, the plaintiffs, as tax-payers residing in the city of Helena, filed a complaint in the District Court of Lewis and Clarke County against the following defendants: Theodore H. Kleinschmidt,

mayor, and John R. Watson, Peter J. Conner, Herman Richter, William Muth, John Saul, John Stedman, William Lorey, Duigan, R. H. Howey, Richard Hoback, Joseph Gans, W. J. Bickett, Richard Lockey, and Charles A. De Witt, city council of the city of Helena, Montana, and George F. Woolston, and the city of Helena. The said action was for an injunction against the defendants to prevent the carrying out of this ordinance. A preliminary injunction was granted. A motion was made by the defendants to dissolve this injunction, and coming up for hearing before the Hon. D. S. Wade, chief justice, as district judge, it was overruled. The case was then appealed to the Supreme Court, where the judgment of the District Court was affirmed, and the injunction sustained. The case was then remitted to the District Court, and an answer was filed by the defendants, and thereafter a motion was made by plaintiffs for judgment on the pleadings. This motion came on for hearing before the Hon. N. W. McConnell, chief justice, as district judge, and was granted to the extent of allowing final judgment for a perpetual injunction against defendants, restraining them from exercising any acts under said ordinance No. 93, so far as the same referred to the contract provisions between Woolston and the city. From this the defendants appealed. The case as formerly before the Supreme Court, on the motion, is reported in 6 Mont. 502, et seq. The opinion was delivered by McLeary, J., with whom Galbraith, J., concurred. BACH, J., dissented, on the ground that the ordinance was divisible, and that the suit was prematurely brought, refusing to consider the validity of the ordinance.

*Carter & Clayberg,* for Appellants.

A monopoly is defined by Bouvier as "an institution or allowance by grant from the sovereign power of a State by commission, letters patent, or otherwise, to a person or corporation, by which the exclusive right of buying, selling, making, working, or using anything, is given." A monopoly is defined by Lord Coke as "an exclusive right granted to a few, of something which was before of common right, so it is not a case of monopoly, if the subject had not the common right or liberty before to do the act, or possess or enjoy the privilege or franchise granted, as a com-

mon right." (7 Bacon's Abr. 23.) Burrill defines it to be "the exclusive privilege of selling any commodity. Defined in English law to be a license or privilege allowed by the king for the sole buying or selling, making, working, or using of anything whatsoever, whereby the subject in general is restrained from that liberty of manufacturing or trading which he had before." Wharton's definition is almost *verbatim* with that of Burrill. The following cases also give the construction of the courts: *City of Memphis* v. *Memphis Water Co.* 5 Heisk. 495; *Broadway & L. P. Ferry Co.* v. *Hankey*, 31 Md. 346–349; *N. O. Gas Co.* v. *Louisiana Light Co.* 115 U. S. 659; *N. O. Water Co.* v. *Rivers*, 115 U. S. 674; *Alpers* v. *City of San Francisco*, 12 Sawy. 631; *City of Louisville* v. *Wible*, 84 Ky. 290; *Des Moines St. Ry.* v. *Des Moines Broad Gauge St. Ry.* 73 Iowa, 513; *Charles River Bridge* v. *Warren Bridge*, 11 Peters, 420. In all these States there are constitutional restrictions as to monopolies. Is the ordinance within these definitions? We think it apparent that a monopoly must come from a grant. A grant presupposes the exercise of the legislative function of the municipality. The only exclusive right which flows from this ordinance does not come through the exercise of this function, but arises from contract relations into which the city has entered by virtue of an exercise of its business function. The existence and circumstances of exercise of these two functions of municipalities are clearly shown by the following authorities: *City of Quincy* v. *Lorenzo Bull*, 106 Ill. 337; *Putnam* v. *City of Grand Rapids*, 58 Mich. 416; *City of Indianapolis* v. *The Indianapolis Gaslight & Coke Co.* 66 Ind. 396; *City of Valparaiso* v. *Gardner*, 97 Ind. 1; 49 Am. Rep. 416. The plaintiffs sue as tax-payers, and the only injury of which they can be heard to complain must come to them in that capacity. The only injury which can come to them in that capacity is an increase of taxation. (See Dillon on Municipal Corporations, §§ 906–922, 932.) The charter of the city provides for a levy to the extent of three mills on the dollar for general purposes, and three mills on the dollar for fire department purposes. (§ 1, amendments of 1885, p. 25, Helena City Charter.) Section 25 of the ordinance contemplates and authorizes no other or further tax. There is nothing to show that such tax is not already levied. There is absolutely no alle-

gation that the ordinance will increase the tax. That the tax will be increased cannot be assumed from the other allegations of the complaint. The council have the right to determine the extent of the tax to be levied each year, and within the charter provisions have the right to make the levy each year up to the limit. No court can control them in this regard. The ordinance does not compel such levy, and it is entirely uncertain whether a tax to the full extent allowed will ever be necessary. The amount to be paid remains fixed, while the fund is increased yearly by the increase of taxable property in the city. The following cases seem pertinent: *Searle* v. *Abraham,* 73 Iowa, 507; *Grant* v. *City of Davenport,* 36 Iowa, 396–406; *Dodge* v. *Council Bluffs,* 57 Iowa, 560. The question of reasonableness, as to the period of the exclusive privilege, must necessarily be determined upon a consideration of the surrounding circumstances. At the date of the passage of the ordinance, Helena was a city of about ten thousand inhabitants, and was increasing in population rapidly. The water supply was wholly inadequate to the wants of the citizens and municipality. And why has the court held it unreasonable as to time? The reasons are stated on pages 533 and 534 of 6 Mont. This decision was based upon the allegations in the complaint alone. An answer is now filed which brings before the court new facts, which may be considered by the court in arriving at a conclusion relative to the reasonableness of time. Time contracts of a similar nature have been upheld in the following States: Illinois — *City of East St. Louis* v. *East St. Louis Gaslight & Coke Co.* 98 Ill. 415; 38 Am. Rep. 97 (30 years); Iowa — *Grant* v. *City of Davenport,* 36 Iowa, 396 (25 years); *Des Moines St. Ry.* v. *Des Moines Ry.* 73 Iowa, 513 (30 years); California — *Alpers* v. *City of San Francisco,* 12 Sawy. 631 (20 years); Massachusetts — *Smith* v. *Town of Dedham,* 144 Mass. 177 (10 years); New Jersey — *Atlantic City Water Works* v. *Atlantic City,* 48 N. J. L. 376 (indefinitely); *Read* v. *Atlantic City,* 49 N. J. L. 558; Kentucky — *City of Louisville* v. *Wible,* 84 Ky. 290 (5 years); Indiana — *City of Indianapolis* v. *Gas Co.* 66 Ind. 396 (20 years); *City of Valparaiso* v. *Gardner,* 97 Ind. 1; 49 Am. Rep. 416 (20 years). The authority is admitted in the following States: Oregon — *Salem Water Co.* v. *Salem,* 5 Or. 29 (17 years); Pennsylvania — *Erie's Appeal,* 91 Pa. St.

398 (25 years); Michigan — *Putnam* v. *City of Grand Rapids*, 58 Mich. 416 (5 years). We insist that the ordinance does not create an indebtedness in violation of those provisions of the city charter, which are as follows: "Section 17. That said city council shall not be authorized to incur any indebtedness on behalf of said city, for any purpose whatever, to exceed the sum of twenty thousand dollars. Section 37. That the city council, at any time when they shall deem it expedient for the interests of the city, for the purpose of paying the debts of the fire department, or for the creation of permanent improvements, or for taking up outstanding warrants against the city treasury, shall have authority and may issue, on the credit of the city, bonds with interest-bearing coupons, payable semi-annually, and in such amount as may be necessary for the purpose herein specified; provided that the aggregate amount of said bonds and all indebtedness and liability of the city shall not at any time exceed the sum of twenty thousand dollars." Municipalities acquire funds by taxation. Where the power is given to levy a tax, the fund is provided, and when the fund is appropriated to pay for a commodity to be delivered in the future upon such delivery, it is tantamount to a cash payment; therefore there is no debt, because the moment the obligation to pay arises, it is provided for and liquidated. No debt can arise prior to the delivery of the commodity, because prior to that time there can be no obligation to pay. By the appropriation at the time the expense was incurred, the obligation to pay is prevented from arising. The matter is treated as a cash transaction. The following authorities fully support this view: *City of Valparaiso* v. *Gardner*, 97 Ind. 1; 49 Am. Rep. 416; *Grant* v. *City of Davenport*, 36 Iowa, 396; *State* v. *McCauley*, 15 Cal. 430; *McCauley* v. *Brooks*, 16 Cal. 11; *Koppikus* v. *Cap. Com.* 16 Cal. 249; *People* v. *Pacheco*, 27 Cal. 176; *Dively* v. *Cedar Falls*, 27 Iowa, 227; *Erie's Appeal*, 91 Pa. St. 398; *Smith* v. *Dedham*, 144 Mass. 177; *Salem Water Co.* v. *Salem*, 5 Or. 29; *People* v. *Arguello*, 37 Cal. 524; *East St. Louis* v. *East St. Louis Gaslight & Coke Co.* 98 Ill. 415; 38 Am. Rep. 97; *Wentworth* v. *Whittemore*, 1 Mass. 471; *Frothingham* v. *Haley*, 3 Mass. 68; *Weston* v. *City of Syracuse*, 17 N. Y. 110; *Wilson* v. *Shreveport*, 29 La. An. 673; *Read* v. *Atlantic City*, 49 N. J. L. 558. The suit was prematurely brought, because the danger was

not so imminent as to warrant an injunction. The language of JUDGE BACH in his dissenting opinion on the former appeal is very pertinent. (6 Mont. 565.) A court will not undertake to enjoin a merely threatened and possible injury. It must be imminent, certain, substantial, irreparable, and inevitable; not possible, contingent, and chimerical. (*Dodge* v. *City of Council Bluffs*, 57 Iowa, 560; *Kearney* v. *Andrews*, 10 N. J. Eq. 70; *Bank of California* v. *F. C. & I. Co.* 53 Cal. 201 ; *Bigelow* v. *Hartford Bridge Co.* 14 Conn. 565 ; 36 Am. Dec. 502; *Morgan* v. *City of Binghamton*, 102 N. Y. 500; *Spring Valley Water Works* v. *Bartlett*, 8 Sawy. 555; *Searle* v. *Abraham*, 73 Iowa, 507; *Westbrook Manuf. Co.* v. *Warren*, 77 Me. 437.) And again, if the ordinance is void, as alleged and claimed, and as decided by a majority of the court, then no injury can possibly occur, and an injunction is absolutely useless. The warrants would be void, and never could be enforced. It is presumed they would never be issued. (*People* v. *Canal Board*, 55 N. Y. 391; *Linden* v. *Case*, 46 Cal. 171; *Merriam* v. *Supervisors*, 72 Cal. 517.) As before established, the only injury of which plaintiffs can complain is an increase of taxes. We submit that the decree and judgment of the court below should be reversed, and a decree entered by this court sustaining the validity of the ordinance.

*E. W. Toole*, for Respondents.

The principles announced in *Davidson* v. *Dallas*, 15 Cal. 75, et seq., are conclusive of those involved in this case. The facts, in so far as they are at all important, are identical. In that case the court holds that in so far as any new question presented upon the second appeal is concerned, in the *same case*, it will be considered and determined; but as to questions which remain the same, and were determined upon the former appeal, they could not. (See, also, *Mulford* v. *Estudillo*, 32 Cal. 131; *Kile* v. *Tubbs*, 32 Cal. 332; *Argenti* v. *Sawyer*, 32 Cal. 414; *Yates* v. *Smith*, 40 Cal. 662.) This rule is universal, in so far as courts of purely appellate jurisdiction over the matters in question are concerned, and it can make no difference that public rights and interests are involved. (See language of Chief Justice Field in *Leese* v. *Clark*, 20 Cal. 418, 419.) If any doubt exists as to the

precise questions decided upon the former appeal, the court will look into the record in order to correctly apply the rule that such decision is the *law of the case.* (*McKinlay* v. *Tuttle,* 42 Cal. 571; *Page* v. *Fowler,* 37 Cal. 100; *Polack* v. *McGrath,* 38 Cal. 666; *Gates* v. *Salmon,* 46 Cal. 362.) Does the ordinance create a monopoly or grant special privileges, and is it unreasonable as to time? Section 1889, Revised Statutes, United States, is as follows: "The legislative assemblies of the several Territories shall not grant private charters or especial privileges, but they may, by general incorporation acts, permit persons to associate themselves together as bodies corporate for mining, manufacturing, and other industrial pursuits. . . . ." Under this act of Congress the legislative assembly of this Territory has not the power to grant the city of Helena a right to create *monopolies,* i. e., grant *especial privileges,* even had it assumed to do so. Had Congress not imposed the limitation quoted upon the legislative powers of the Territory, and the legislature had granted the franchise mentioned in this ordinance, leaving it for the city, through its *business function,* to contract for a supply of water, the authorities cited by counsel for appellants would be more applicable to the questions involved. If the municipality has not the inherent power to create a monopoly, and it has not expressly and unmistakably been conferred upon it by some legislative act, how does it help the case by citing authorities to show that the act mentioned was intended as a limitation upon the legislative assembly. The principle is universal that a municipal corporation has only such general powers as are clearly conferred upon it, with such subsidiary incidental powers as are necessary to the exercise of its well-defined powers. In the case of *Saginaw G. L. Co.* v. *City of Saginaw,* 34 Alb. L. J. 412, et seq., the court holds that in order to make a contract by which one man, or a set of men, are to erect, own, and maintain pipes, hydrants, and water for city purposes, the power must be expressly and unequivocally conferred, and that unless this is the case, it is the duty of the city to erect and construct and own its water-works, and thereby prevent a monopoly in others; and we assert that this is an important and salutary rule. Section 8, page 8, of the city charter, is creative of all the power the city possesses in this respect. It reads as follows: "To provide

the city with water, erect hydrants and pumps, build cisterns, and dig wells in the streets for the supply of engines and buckets." "In all cases of contracts to run for years, the authority to make them should be clear. It is better that all parties should understand that there is a limit to the authority of municipal bodies in such cases." (*Garrison* v. *Chicago*, 7 Biss. 480. See, also, 1 Dillon on Municipal Corporations, 8th ed. 130, et seq.; *Baltimore* v. *Gill*, 31 Md. 375; *Wallace* v. *San Jose*, 29 Cal. 180; *French* v. *Burlington*, 42 Iowa, 614; *State* v. *Medbery*, 7 Ohio St. 537; *People* v. *Pacheco*, 27 Cal. 175; Cooley's Constitution, 236; *Dunham and Daniels* v. *Trustees of the Village of Rochester*, 5 Cowen, 465; *Saginaw G. L. Co.* v. *City of Saginaw*, 34 Alb. L. J. 412; *New London* v. *Brainard*, 22 Conn. 555.) Upon the questions of monopoly we invite the attention of the court, especially to the unanswerable logic of Mr. Justice McLeary, in 6 Mont. 528–532; opinion Nelson, C. J., in *Britton* v. *Mayor*, 21 How. Pr. 251, and *Minturn* v. *Larue*, 23 How. 435; opinion of Marshall, C. J., in *Goszler* v. *Georgetown*, 6 Wheat. 593; *Mayor etc.* v. *S. A. R. R. Co.* 32 N. Y. 261; *Robinson* v. *Mayor*, 34 Am. Dec. 637, n.; *Ottawa* v. *Carey*, 108 U. S. 110, 123. The legislative assembly has never passed upon the propriety of the ordinance, so as to leave it purely a business matter with the city in making the contract. Touching the powers of the city council, we also cite: Tiedeman on Limitations of Police Power, 639, § 212; City Charter, § 8, p. 8; § 33, p. 10; § 5, p. 13; § 17, pp. 19, 37; p. 30; and § 1, p 25; *Milhau* v. *Sharp*, 27 N. Y. 611; 84 Am. Dec. 314; Cooley's Constitutional Limitations, 253; Dillon on Municipal Corporations, § 61; Angell & Ames on Corporations, § 262; *Minturn* v. *Larue*, 23 How. 435, 436, 437, 438; *State* v. *C. G. L. & C. Co.* 18 Ohio St. 262; *Logan* v. *Pyne*, 43 Iowa, 524; 22 Am. Rep. 261; *Jackson County R. R. Co.* v. *I. R. T. Ry. Co.* 24 Fed. Rep. 306; *Litchfield* v. *Ballou*, 114 U. S. 190, 192; *Richmond etc.* v. *Middleton*, 59 N. Y. 228; *People's R. R.* v. *Memphis R. R.* 10 Wall. 50–52; *Garrison* v. *Chicago*, 7 Biss. 480.) Referring to the argument of counsel, wherein it is insisted that even if the ordinance creates a monopoly or special privilege, respondents are not in a situation to complain, we desire to present a few additional considerations and authorities upon the

converse of this proposition. This action was brought to restrain defendants from unlawfully collecting and unlawfully paying out public funds. It appears from the allegations and the exhibits referred to, that plaintiffs are resident tax-payers of the city of Helena, and that a contract has been entered into, by the terms of which the city council will make an illegal disposition of the people's money, which is to be met by the taxation of their property. In such case a court of equity will stay the execution of the contract, and prevent the illegal expenditure. (*Crampton* v. *Zabriskie*, 101 U. S. 601, 604, 609; Pomeroy's Equity Jurisprudence, §§ 258, 260, n. 1, 270, 273; *Newmeyer* v. *M. & M. R. R.* 52 Mo. 84, 89; 14 Am. Rep. 394; *Rice* v. *Smith*, 9 Iowa, 576; *Terrett* v. *Town of Sharon*, 34 Conn. 108; *People* v. *Mayor*, 32 Barb. 35; *Milhau* v. *Sharp*, 15 Barb. 193–244; *Pullman* v. *Mayor*, 49 Barb. 57; *Mayor* v. *Gill*, 31 Md. 375; *Smith* v. *Appleton*, 19 Wis. 468.) Equity, affording a preventive remedy, will enjoin the unlawful expenditure and thus avoid a multiplicity of suits. This is the result of the authorities we have cited, and would seem to be conclusive. It is unauthorized, illegal expenditure of public moneys to be met by taxation that constitutes the *gravamen* of this question. (*Crampton* v. *Zabriskie*, 101 U. S. 604, 609; *Rice* v. *Smith*, 9 Iowa, 576; *Terrett* v. *Town of Sharon*, 34 Conn. 108; *New London* v. *Brainard*, 22 Conn. 555; and High on Injunctions, § 374, are authorities on this point.) And as bearing on the right to enjoin in this case we also cite: Cooley's Constitutional Law, p. 238, and n.; *East Oakland* v. *Skinner*, 94 U. S. 255, 258; Dillon on Municipal Corporations, § 381; *Clark* v. *Des Moines*, 19 Iowa, 209; 87 Am. Dec. 423; 4 Wait's Actions and Defenses, p. 602; *Thomas* v. *City of Richmond*, 12 Wall. 349; also Pomeroy's Equity Jurisprudence, §§ 258, 260, and n., 270, where injury is said to be presumed from an unlawful and unauthorized act. Does the ordinance create an indebtedness in violation of the charter? We call especial attention to the phraseology of the act of Congress and city charter upon this subject, and in connection therewith cite: *Buchanan* v. *Litchfield*, 102 U. S. 278; *Litchfield* v. *Ballou*, 114 U. S. 190, 192; *Springfield* v. *Edwards*, 84 Ill. 626. It is a violation of the city charter. Section 17, page 19, is as follows: "That said

city council shall not be authorized to incur any indebtedness on behalf of said city *for any purpose whatever,* to exceed the sum of twenty thousand dollars." The latter portion of section 37, page 20, provides, "that the aggregate amount of said bonds and all *indebtedness* and *liability* of the city for *any* and *all purposes* shall not at any time exceed the sum of twenty thousand dollars." Now a liability is defined to be "the condition of one who is subject to a charge or duty which may be judicially enforced." The charge and duty of raising the revenue to meet the expenditure can and will be judicially enforced, if this contract is declared to be valid. We insist that the indebtedness incurred by this ordinance is much larger than that contemplated by the city. If any doubt exists as to the improvident or premature issuance of this injunction it will certainly be set at rest by the admirable reasoning of the learned associate justice of this court in the case found in 6 Mont. 548–553.

LIDDELL, J.—The plaintiffs in this suit are citizens and taxpayers of the city of Helena, and instituted the present action in 1886, against the defendants, mayor and aldermen of the city aforesaid, and against one G. F. Woolston.

It appears that on the 22d of November of that year, the city council, by an ordinance, granted to the defendant Woolston the franchise of laying mains and water pipes through the streets and supplying water to the inhabitants of said city, as well as furnishing the corporation with water for fire and sewerage purposes for a period of twenty years at a stipulated payment of one thousand two hundred and fifty dollars per month.

The plaintiffs alleging the contract to be illegal, at the time of filing their suit, applied for and obtained an injunction restraining the city council from entering into the contract or paying out any money in accordance therewith. The defendants (except Woolston) appeared and moved to dissolve the injunction upon various grounds to be noticed hereafter; and when the motion was decided against them, appealed the case to this court where it was tried in January, 1887. The opinion of the court, found on page 502 of 6 Mont., affirms the decision of the lower court, and the defendants having filed their answer, the case was again decided in favor of the plaintiffs upon their motion

for judgment on the pleadings; and from this judgment the present appeal is prosecuted. Before we can intelligently understand the present issues in the case it will be necessary to consider the opinion referred to, and find from it what issues were presented, and what points therein decided.

The complaint alleges the illegality of the ordinance entering into the contract; *first,* because it creates a monopoly; *second,* because it increased the indebtedness and liability of the corporation beyond twenty thousand dollars, which is the amount limited by sections 17 and 37 of the charter of the city; *third,* because it involved an expenditure of over one hundred dollars, and was not advertised in accordance with the provision of the city·charter; *fourth,* that the ordinance is in violation of the act of Congress passed the 10th of July, 1886. Those grounds in the motion to dissolve which were insisted upon, were that the bill was without equity and that the writ was improvidently issued.

In the outset of the opinion, the organ of the court, Justice McLeary, while expressing the opinion that Woolston was not a party to the record by reason of the failure to summons him, nevertheless holds that the parties before the court were sufficient to the complete determination of the controversy and the issues involved.

From a careful reading of that opinion we find that the following issues were determined in that controversy, brought about by the motion to dissolve: *First.* The court held that the plaintiffs had the right to enjoin the council from the execution of and expenditure of the city's revenues, upon an illegal contract. *Second.* The court held that the defendant, Woolston, was not a party to the proceedings, never having been summoned, and was not a necessary party. *Third.* The court declines to express any opinion as to the divisibility of the franchise and contract. *Fourth.* That part of the ordinance which gave to Woolston the exclusive right and power of selling water to the city of Helena for a period of ·twenty years at a fixed rate is a monopoly. *Fifth.* That under the charter of the city no authority existed for the creation of monopolies. *Sixth.* The ordinance granting the exclusive right and power to furnish the city water for a period of twenty years at a fixed

rate was not for a reasonable period under the circumstances, and the contract was one beyond the power of the council to enter into. *Seventh.* The contract proposed was one forbidden by section 17 of the city charter, as amended by the Act of 1883, page 19, which limits the city indebtedness for any purpose whatever to twenty thousand dollars. *Eighth.* That the indebtedness of the city at that time already exceeded the limit fixed by the charter, to wit, twenty thousand dollars. *Ninth.* No further debts could be incurred without aid from the legislature of the Territory. *Tenth.* " That whether the contract was considered in the nature of a debt or liability, it is prohibited by section 37 of the city charter, which provides that the aggregate amount of bonds, and all indebtedness and liability of the city for any and all purposes whatever, shall not exceed the sum of twenty thousand dollars. *Eleventh.* For this reason it is beyond the authority of the council to make it or carry it out in any particular. *Twelfth.* The court also holds that the contract is void because it involved an expenditure of over a hundred dollars, and was not advertised before letting as is required by the city charter, page 15. *Thirteenth.* The contract does not create an indebtedness which falls within the act of Congress of the 10th of July, 1886. *Fourteenth.* The injunction was neither improvidently nor prematurely issued.

After this decision the defendants filed an answer admitting the assessed value of property in the city to be five million dollars, as stated in the complaint, and that the bonded indebtedness is also as stated in the complaint, to wit, nineteen thousand dollars ; but they deny any floating indebtedness at all on the part of the city. They deny any contract or intention to contract between Woolston and the city; but aver that the tenor and effect of the ordinance is to authorize and empower Woolston to lay pipes and mains and to furnish the inhabitants of the city with water, and to procure from him such water as is needed for city purposes; and that to pay for such water the ordinance makes appropriation.

Without enumerating further the denials and allegations of new matter, we may say generally that the answer puts at issue all the points presented in the complaint and passed upon in the opinion of the Supreme Court heretofore referred to.        In

passing upon the motion for judgment on the pleadings, the court, while sustaining it, modified the injunction in so far as it restrained Woolston from erecting his system of water-works under the franchise, but made the writ perpetual as to the council, and prohibited them from carrying out the ordinance wherein it gives the exclusive right and power to Woolston to furnish the city with water for fire and sewerage purposes for the period of twenty years. From this judgment it is plain that the question of the divisibility of the ordinance has been recognized by the judge *a quo*, and from the oral arguments and briefs we understand the point to be conceded by counsel for both sides, and that it is therefore eliminated from the contract.

This being the case we are confronted with the identical questions which were passed upon in the former appeal. It is true, however, that the allegations of the answer which go to show the enhanced or increased value of the taxable property and revenues of the city might make it necessary to review one of the questions, that is, whether or not the revenues are sufficient to meet the additional expenditure without increasing the debt or liability of the city. But even if that point was well taken we could not consider it, because the injunction must stand or fall by the state of facts which existed at the time the writ was granted.

Counsel for defendants in their exhaustive brief announce the following questions, which will have to be decided in their favor in order to entitle them to a decree: (1) Does the ordinance create a monopoly? (2) If so, can plaintiffs question it? (3) Is the contract part of the ordinance unreasonable as to time? (4) Does the ordinance create an indebtedness in violation of the provisions of the city charter? (5) Was the suit prematurely brought, and was the danger imminent?

We do not deem it necessary to proceed further than an examination of the first two questions, both of which must be decided adversely to the pretensions of the appellants.

It is a well-established principle of jurisprudence that when the Supreme Court has once laid down the law governing a case, it must be followed even though the decision be erroneous. And this rule is based upon the fact that the jurisdiction of the Supreme Court being only appellate, and the delays for rehear-

ing having expired, the matter passes beyond the jurisdiction of the court. The principle is almost inflexible, and is supported by an overwhelming array of authorities which make no distinction between public and private rights. See the case of *Davidson* v. *Dallas,* 15 Cal. 82, 83, where Justice Baldwin, after expressing the disapproval of the court of its former decision, uses the following language: "But the respondent's counsel meets this view by opposing to it the decision and judgment heretofore made, and claims that whether erroneous or not, that decision is the law by which we are bound. And we are compelled to yield our assent to the proposition. The question of the binding force upon this court of its own judgments, rendered at a previous term in the same case, is not an open one. It arose early, and was first announced in the case of *Dewey and Smith* v. *Gray,* 2 Cal. 376. In that case the court said: 'When this case was here before, the court decided that if a landlord entered upon his tenant's premises without his consent, before the expiration of the lease, and relet the premises to another, such entry and reletting discharged the tenant from his covenant, except as to such part of the rent as had accrued at the time of the re-entry, which the landlord was entitled to recover.' The latter portion of that decision is in abrogation of one of the plainest principles of law, and if this case was a new one, I would not hesitate to overrule it, but legal rules deprive us of the power to do so. The decision having been made in this case, it has become the law of the case, and it is not now the subject of revision. The question was very fully argued and considered by the Supreme Court of the United States in the case of the *Washington Bridge Co.* v. *Stewart,* 3 How. 413, and although in that case the question raised on the record was the important one of jurisdiction, it was, notwithstanding, held that the decision of the court in the same case was conclusive of the rights of the parties, and not 'revisable.'" This decision was followed by the cases of *Clary* v. *Hoagland,* 5 Cal. 476; 6 Cal. 685; also *Gunter* v. *Laffan,* 7 Cal. 592. See, also, the following cases: *Washington Bridge Co.* v. *Stewart,* 3 How. 413, 424; *Himely* v. *Rose,* 5 Cranch, 313; *Skillern's Exrs.* v. *May's Exrs.* 6 Cranch, 267; *Santa Maria,* 10 Wheat. 442; *Ex parte Sibbald,* 12 Peters, 488, 491; *Hosack* v. *Rogers,* 25 Wend. 313, 364; *Stiver* v. *Stiver,*

3 Ohio, 19; *Booth* v. *Commonw.* 7 Met. 286; *Russell* v. *La Roque*, 13 Ala. 151.  See, also, *Mulford* v. *Estudillo*, 32 Cal. 131; *Kile* v. *Tubbs*, 32 Cal. 338; *Argenti* v. *Sawyer*, 32 Cal. 414; *Yates* v. *Smith*, 40 Cal. 662.)

By turning to the opinion of Justice McLeary, as it appears on pages 522, 523, and 524, 6 Mont., it will be seen that he has most exhaustively considered the question of the right of the parties plaintiff to institute this suit, and concludes by saying: "The right of the plaintiffs, being tax-payers, to bring this suit, and in proper case . . . . to procure an injunction to restrain the illegal disposition of the city's money, cannot be doubted." Passing now to the question of the monopolistic feature of the proposed contract, which is by way of ordinance, a copy of which is attached to the complaint, and thus before the court, Justice McLeary not only declares it a monopoly, but that it is void as being beyond the power and scope of the city council to create. In these two propositions he analyzes the ordinance, comments upon its construction, and reviews many authorities which conclusively demonstrate to him that it is open to the objectionable charge.  After devoting six pages to the discussion of this question, he uses the following forcible and expressive language: "Tried both by the square of principle and the plumb line of authority, this contract proves itself in all essential particulars a monopoly, and for that reason the making of it is beyond the powers of the city council, unless it were expressly authorized by the legislature."

We do not deem it either proper or necessary to recapitulate the arguments or reasons of the court on these points.  The decision is the law of the case, and must govern in all its stages. It also appears that the question as to the right of the writ was in issue upon the motion to dissolve, and after being thoroughly considered, the court held that it had been properly issued. There is neither law nor reason in re-opening the questions which have once been decided by the Supreme Court in this litigation.  Without going any further in the examination of the points raised by the able counsel for the defense, we are unanimously of the opinion that the right of the plaintiffs to institute this suit, and to the writ of injunction, and the nullity of the ordinance on account of its monopolistic features, having been once

decided in this litigation, the same questions cannot again be reviewed on this appeal.

The judgment of the lower court is therefore affirmed.

*Judgment affirmed.*

BACH, J., and DE WOLFE, J., concur.