STATE OF NEBRASKA, EX REL. UNION FUEL COMPANY, V. CITY OF LINCOLN ET AL.

FILED APRIL 22, 1903.    No. 12,583.

1. **Mandamus:** INFERIOR BOARD: DISCRETION. Mandamus will not lie to compel an inferior board or tribunal to do an act in the performance of which discretion or judgment is required to be exercised.

2. ———: CITY COUNCIL: AWARD OF CONTRACT. Under section 120, chapter 13, article 1, Compiled Statutes, 1901, mandamus will not lie to compel the city council to award the contract to supply coal for the city water department to a bidder on the ground that he is the lowest and best bidder, as, in passing upon the question who is the best and lowest bidder, the council exercises a discretion not controllable by mandamus.

ERROR to the district court for Lancaster county: LINCOLN FROST, DISTRICT JUDGE. *Affirmed.*

*Lionel C. Burr* and *Elmer E. Spencer,* for plaintiff in error.

*Edmund C. Strode* and *D. J. Flaherty, contra.*

KIRKPATRICK, C.

This is an application for a writ of mandamus addressed to the district court for Lancaster county by relator, the Union Fuel Company, seeking to compel the city council of the city of Lincoln to award it a contract to furnish for the use of the city 3,500 tons of Rich Hill mixture nut coal, or so much thereof as might be needed at $2.10 per ton. The trial court denied relator's application.

The basis of relator's contention is that it was the lowest and best bidder, and that, this fact being established, it was mandatory upon the city council, under the statute, to award it the contract. There were only two bids for nut mixture coal, namely, that of the Whitebreast Coal Company upon Cleveland nut mixture, at $2.15, and that of relator upon Rich Hill, at $2.10. In order that contention of relator may be clearly apprehendeded, it is necessary to quote, in part, section 120, chapter 13, article 1, Compiled Statutes of Nebraska, 1901 (Annotated Statutes, 7819):

"It shall be the duty of the city clerk, on or before the first day of June, annually, to prepare separate estimates of all kinds of supplies, personal property and material, required for the use of the city during the following fiscal year, and during the first week in June he shall publish a brief advertisement in one newspaper published in the city, stating the probable amount and kind of supplies, personal property and material required by such city during the following fiscal year and inviting bids therefor which bids shall be filed with said clerk on or before the first day of August. The council shall on or before the tenth day of August, succeeding such advertisement, open said bids and accept the bid or bids of the

lowest and competent bidder, * * *.. The city council shall at its first meeting in September award a contract or contracts for such supplies, personal property and material to the best and lowest bidder or bidders · competent under the statute."

Pursuant to this statute the city clerk published the following notice:

"Notice for Bids. Sealed bids will be received at the city clerk's office, Lincoln, Nebraska, for personal property, material and supplies for the water department of the city of Lincoln for the year commencing September 7, 1901, as per schedule on file in the city clerk's office. All bids must be filed with the clerk on or before the first day of August, 1901. The city reserves the right to reject any and all bids. (Signed.) Thomas Pratt, City Clerk."

As we apprehend contention of counsel for relator, it is that under the statute quoted the city council has no discretion, but the duty devolves imperatively upon it to award the contract to the lowest responsible bidder. The respondents contend that the city council is vested with discretion in the premises, and that under the evidence upon which the trial court acted, it is shown that that body exercised the discretion wisely and honestly, and for the best interests of the city.

We do not understand that any dispute arises in this case as to the law, settled by numerous decisions of this court, that mandamus will not lie to govern the conduct of an inferior tribunal or board in any action wherein judgment or discretion is required to be exercised. We regard it as elementary that where mandamus is sought, relator must show clearly and conclusively that he is entitled under the law to the particular act or thing desired, and that the respondent is legally obligated to give him what he asks. *State v. Kendall,* 15 Neb. 262; *State v. Wenzel,* 55 Neb. 210; *Laflin v. State,* 49 Neb. 614.

The crucial question herein, accordingly, is whether the city council in awarding the contract exercises discretionary power, or acts wholly ministerially. The section

just quoted says that: "The council shall * * * accept the bid * * * of the lowest and competent bidder"; and again: "The city council shall * * * award a contract * * * for such supplies * * * to the best and lowest bidder." The fundamental principle of statutory construction is ascertainment of the intent of the legislature. *People v. Weston*, 3 Neb. 312. And all the language of the statute should be given effect where possible. *Follmer v. Nuckolls County*, 6 Neb. 204. These rules should be kept in mind in considering the statute under consideration. We take it to be generally understood that the several kinds of coal now on the market possess certain individual characteristics, one adapted to one purpose, another specially adapted to some different purpose. Where fuel in large quantities is consumed by one management, it is matter of economic necessity to look to the kind of coal best adapted to the purpose for which it is needed. Disregard of this consideration would certainly not be consistent with prudence or common sense. It can not be said that, all prices being equal, it would be immaterial from the standpoint of cost what particular kind of coal respondents used in the water plant. Certainly the aim of the law framers must have been that the city council should purchase the cheapest coal. A careful reading of the section quoted has convinced us that the legislature, to accomplish this purpose, did not undertake to make it incumbent upon the council to award the contract to the bidder who offered to sell at the lowest price per ton, as long as in reason a question could remain whether another coal at a higher price, taking into consideration the use to which the fuel was to be devoted, and the conditions under which it must be used, would not be cheaper. Stated differently, we do not think it was intended that a mere comparison of the prices, regardless of the quality, should be decisive of the question of cheapness.

The peculiar facts in this record are illustrative of the truth of what we have just said. It appears practically without dispute that the coal which the city council de-

cided to buy is better and cheaper at $2.15 than that of relator at $2.10, if the present grates in the boilers are continued in use; because, as the testimony of respondents tended to show, the present grates were not adapted to Rich Hill nut.

As to the qualities of the two coals for steam power purposes the testimony shows considerable conflict, but the testimony that the Cleveland nut mixture is cheaper at the price paid is more than ample to support the conclusion that the council did not abuse its discretion in selecting it.    Such a discretion they doubtless possessed. . The statute we are considering uses language clearly implying that the council should go beyond mere price, and test the quality with reference to the price.    The peculiar needs and conditions of the plant, the adaptability of the different coals to those conditions, the necessity for changes in equipment in case a change were made in the kind of fuel, all these considerations were of importance as well as the price.    Manifestly the legislature, in saying that the contract should be awarded to the best and lowest bidder, contemplated that the council should pass judgment upon the question who was the lowest and best bidder; and doing so, we are clear, they exercised functions which can not, under the law, be controlled by mandamus.

Counsel complain in brief of the notice for bids already quoted, the objection being that the notice refers to a schedule on file in the clerk's office, instead of setting out in the notice the exact kinds of material called for.    Clearly the notice is objectionable in this respect.    A faithful compliance with the statute would have led the clerk to state in such notice "the probable amount and kind of supplies." No doubt, in a proper and timely proceeding the court would have required the clerk to give notice as provided by statute.    But his failure to comply strictly with the statutory directions in this regard does not make the right of relator to the relief asked any clearer. · The relator submitted its bid, and it is established by the evidence that

it was not in a position to supply the kind of coal which was accepted. We do not see in the manner of the notice anything prejudicial to the rights of relator in this proceeding.

The same may be said with reference to relator's complaint that the contract to the successful bidder was actually awarded at a later date than that directed in the statute. Whether or not this is fatal to the validity of the contract entered into between respondents and the successful bidder need not be determined; but we are satisfied that this fact does not in any way tend to show that relator is entitled under the law to the relief prayed for in its application.

We think that the council in this case possessed a discretion in deciding upon the best and lowest bid, that this discretion was not abused, and that the trial court did not err in denying the writ. It is recommended that the judgment of the district court be affirmed.

HASTINGS and LOBINGIER, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.