Fischer v. Marsh.

---

HARRY FISCHER, APPELLANT, V. GEORGE W. MARSH, AUDITOR, APPELLEE.

FILED FEBRUARY 17, 1925.   No. 24419.

1. **States:** PAYMENT OF CLAIMS. Funds which have been covered into the state treasury and which may be used in payment of claims against the state by warrant of the auditor of public accounts can be withdrawn therefrom only pursuant to an appropriation by the legislature.

2. ———: ———. The auditor of public accounts is authorized to issue warrants only when there has been an appropriation for the specific purpose for which the warrant is drawn, and

Fischer v. Marsh.

when his investigation shall have established that the warrant is for that specific purpose, and that the claim to be paid is just.

3. ————: PURCHASE OF GASOLINE. There has been neither authorization for, nor appropriation of funds to permit of, the purchase of gasoline by the state or its officers for sale to the public, and warrants drawn to pay for gasoline so to be disposed of are unauthorized.

4. ————: ILLEGAL EXPENDITURES: INJUNCTION. "A resident taxpayer, without showing any interest or injury peculiar to himself, may enjoin illegal expenditures by a public board or officer." *Woodruff v. Welton,* 70 Neb. 665.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed: Decree entered.*

*Battelle & Sugarman,* for appellant.

*O. S. Spillman, Attorney General,* and *George W. Ayres, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD, THOMPSON and EVANS, JJ., REDICK and SHEPHERD, District Judges.

EVANS, J.

In this action the plaintiff, the appellant herein, seeks to enjoin the auditor of public accounts "from issuing or delivering any warrant upon" the equipment and material fund, "or upon any other fund, for the payment of gasoline or oils or supplies or materials of any kind in carrying on and conducting" a gasoline station in the city of Lincoln in which gasoline is sold to the public.

On final hearing the trial court found there was "no equity in the petition" and dismissed the action.

There is no controversy as to facts, which are as follows: The department of public works has conducted in the city of Lincoln under its immediate supervision a gasoline station from which the public has purchased gasoline at retail. The retail price has been such that a profit from two to four cents a gallon has been realized. The gasoline has been purchased by the state purchasing agent upon requisition of the department signed by the deputy secretary of

Fischer v. Marsh.

the department.  The vouchers for the gasoline were approved by the governor, the secretary of finance, and the acting secretary of the department of public works.  There has been an appropriation for the "state equipment and material fund."  There has been neither appropriation nor authorization for the purchase or sale of gasoline by the state or any of its departments to the public.

The defenses are:  (1) That, as the state could and did lawfully purchase gasoline to use in its various authorized activities, the irregularity, if any, was in the sale, and not in the purchase; (2) that the auditor had no official knowledge that the warrants were to pay for gasoline to be sold to the public; (3) that, the purchase being lawful, the seller is entitled to his compensation; (4) that, the plaintiff being merely a taxpayer and having suffered no pecuniary loss by reason of such sales, cannot maintain this action.

The provisions of the Constitution material to this controversy are:

"Each legislature shall make appropriations for the expenses of the government until the expiration of the first fiscal quarter after the adjournment of the next regular session, and all appropriations shall end with the fiscal quarter."  Const., art. III, sec. 22.

"No allowance shall be made for the incidental expenses of any state officer except the same be made by general appropriation and upon an account specifying each item. No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law, and on the presentation of a warrant issued by the auditor thereon, and no money shall be diverted from any appropriation made for any purpose or taken from any fund whatever, either by joint or separate resolution.  The auditor shall within sixty days after the adjournment of each session of the legislature, prepare and publish a full statement of all moneys expended at such session, specifying the amount of each item and to whom and for what paid."  Const., art III, sec. 25.

The latter section makes necessary a specific appropriation for a particular purpose, and forbids the drawing of a single dollar from the state treasury unless authorized by an appropriation. *State v. Cornell,* 54 Neb. 647. And there can be no implied appropriation under the Constitution. *State v. Wallichs,* 15 Neb. 609.

Under the Constitution it is not within the province of executive or administrative officers to determine the purpose for which the state's funds may be expended. Only the legislative branch of the government may declare for what purpose and within what amounts state funds may be expended. Any other expenditure than that authorized by the Constitution and valid enactments thereunder is unlawful.

Gasoline might lawfully be purchased for carrying on the state's authorized activities. It could not be lawfully purchased for sale to the public, as such purchase and sale were unauthorized by law.

It is urged that the auditor had no official knowledge that the gasoline that was to be paid for by the warrants, the issuance of which is sought to be enjoined, was for sale to the public.

The Constitution provides: "The legislature shall provide by law that all claims upon the treasury, shall be examined and adjusted by the auditor and approved by the secretary of state, before any warrant for the amount allowed shall be drawn: Provided, that a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court." Const. art. VIII, sec. 9.

Among the duties of the auditor of public accounts are the following:

"First. To audit, adjust and settle all claims for services rendered or expenditures made for the benefit of the state. Provided, such services are rendered or expenditures made by authority of law, except only such claims as may be expressly required by law to be audited and settled by other officers or persons.

"Second. To draw all warrants upon the treasurer for money, except only in cases otherwise expressly provided

for by law, and each warrant so drawn shall bear upon its face a reference to the law authorizing the drawing of the same, naming the fund out of which it shall be paid, and shall be countersigned by the state treasurer before it is delivered to the party in whose favor it is drawn: Provided, that said warrants need not be drawn for at least ten days from the date the claim is presented to the auditor."

"Eleventh.   To examine books, accounts, vouchers, records, and expenditures of all state officers, state bureaus, state boards, state commissioners, state library, and all societies and associations supported by the state, state institutions, state normal schools and the University of Nebraska and to report promptly to the governor the fiscal condition shown by such examinations, including any irregularities or misconduct of officers or employees, and any misappropriation or misuse of public funds or property, and any improper system or method of bookkeeping or condition of accounts."   Comp. St. 1922, sec. 4848.

"All persons having claims against the state shall exhibit the same, with the evidence in support thereof, to the auditor to be audited, settled and allowed within two years after such claims shall accrue; and in all suits brought in behalf of the state, no debt or claim shall be allowed against the state as a set-off, but such as has been exhibited to the auditor and by him allowed or disallowed, except only in cases where it shall be proved to the satisfaction of the court that the defendant at the time of trial is in possession of vouchers which he could not produce to the auditor, or that he was prevented from exhibiting the claim to the auditor by absence from the state, sickness or unavoidable accident:   Provided, the auditor shall in no case audit a claim or set-off which is not provided by law."   Comp. St. 1922, sec. 4850.

"The auditor, whenever he may think it necessary to the proper settlement of any account, may examine the parties, witnesses or others, on oath or affirmation, touching any matter material to be known in the settlement of such account."   Comp. St. 1922, sec. 4851.

Fischer v. Marsh.

It is therefore the duty of the auditor to allow no claim and issue no warrant until he shall have satisfied himself: (1) That there has been an appropriation therefor within the biennium; (2) that the claim is for a specific purpose for which the appropriation has been made; (3) that it is a just claim against the state within these limitations. It is not sufficient that the auditor does not know, he is required to know, that these facts exist before he is authorized to issue the warrant, and to this end he has been authorized to inquire of the parties interested, call and examine witnesses under oath "touching any matter material to be known in the settlement of such account."

It is claimed by the defendant that the claim for gasoline sold to the public is a just debt owed by the state and should be paid. Waiving the question as to the justice of the debt, there must have been an appropriation from which it might be paid. Neither the executive nor the auditor are authorized under our laws to expend the state's money but for the purpose for which it was appropriated.

The statutory inhibition is as follows:

"In all cases of. grants, salaries, pay and expenses, ascertained and allowed by law, found due to individuals from the state when audited, the auditor shall draw warrants upon the treasury for the amount; but in cases of claims, the adjustment and payment of which are not provided for by law, no warrant shall be drawn by the auditor, or countersigned or paid by the state treasurer, but all such claims shall be reported to the next legislative assembly, with such recommendation as the auditor may deem just." Comp. St. 1922, sec. 4853.

The legislature has provided a remedy for the dissatisfied claimant:

"If any person interested shall be dissatisfied with the decision of the auditor on any claim, account or credit, it shall, be the duty of the auditor, at the request of such person, to refer the same, with the reason of his decision, to the legislative assembly." Comp. St. 1922, sec. 4854.

There remains the question as to the plaintiff's right to

maintain this action. It has been held in a number of courts in other jurisdictions that to entitle a taxpayer to the extraordinary relief of injunction as against an officer in his official capacity there must be an injury to the taxpayer. This rule was announced by this court in *Normand v. Otoe County*, 8 Neb. 18, a case where the sureties on a county treasurer's bond sought to restrain an action on the bond they had signed. In *Woodruff v. Welton*, 70 Neb. 665, it is held: "A resident taxpayer, without showing any interest or injury peculiar to himself, may enjoin illegal expenditures by a public board or officer." We quote from pages 667, 668, of the opinion: "The defendant urges that the plaintiff ought not to be permitted to prosecute his suit because it is not shown that he has suffered, or will suffer, any special or peculiar damage by reason of the conduct of which he complains; but in this jurisdiction the law has long been settled beyond debate that a resident taxpayer, as such, and without proof of peculiar interest or injury to himself, may enjoin the illegal expenditure of money by a public board or officer. *Follmer v. Nuckolls County*, 6 Neb. 204; *Grand Island Gas Co. v. West*, 28 Neb. 852; *McElhinney v. City of Superior*, 32 Neb. 744; *Poppleton v. Moores*, 62 Neb. 851, reaffirmed, 67 Neb. 388.

"In such cases, says Judge Dillon, 2 Municipal Corporations (4th ed.) sec. 922, the court should regard the action as 'in the nature of a public proceeding to test the validity of the corporate acts sought to be impeached, and deal with and control it accordingly.' It is evident that, if, in such cases as the present, a taxpayer cannot intervene, no one else can except one who is a participant in the illegal proceedings, and who, according to the defendant's first contention, will be estopped from so doing.

"Finally, it is insisted that the action ought not to be entertained, because it is not made to appear that the public has suffered, or is in danger of suffering, any injury from the proceeding complained of, it not being shown that, if the statute had been obeyed, a lower bid for furnishing the supplies in question would have been obtained. So to hold

would be, practically, to repeal the statute. No one can say what would have happened if something which did not occur had taken place."

It is therefore ordered that the judgment of the district court be reversed and a judgment pursuant to the prayer of the petition be entered in this court.

REVERSED: DECREE FOR PLAINTIFF.

Note—See States, 36 Cyc. 888 (1926 Ann.), 890, 891, 895.

THOMPSON, J., dissenting.

I find myself unable to agree with the majority opinion, either in the statement as to the issues of fact, or the conclusions of law. Plaintiff Fischer brings the action against George W. Marsh, auditor of public accounts, as sole defendant, alleging, in substance, that he is a resident taxpayer; that the state, through its officers, in May, 1924, established a gasoline station in the city of Lincoln, and ever since has been, and now is, selling gasoline to the public generally at retail, and intends to continue to do so; that defendant has and will issue warrants to different persons (designating each by name, and specifying the amount of each warrant in dollars) who have furnished oil and will furnish it, which warrants are drawn on the "equipment and material fund" of the public works department, appropriated for this department in maintaining public bridges, automobiles and trucks used by such department; that there was not included in such appropriation any sum for the purpose of buying and selling gasoline to the public, or for maintaining such station; that the issuing of such warrants diverted the money in that fund from the purpose for which it was appropriated; that the issuance of such warrants is a violation of section 25, art. III of the Constitution.

Plaintiff further alleges that he has no adequate remedy at law, and prays "that defendant be permanently enjoined from issuing or delivering any warrants upon said 'equip-

ment and material fund,' or upon any other fund, for the payment of gasoline or oils or supplies or materials of any kind in the carrying on and conducting of said business."

Defendant, for answer, admits that plaintiff is a resident taxpayer; that the state is selling gasoline at retail to the general public; that warrants for payment of gasoline, including that so sold, have been drawn upon the equipment and material fund, and paid by the state treasurer, and denies each and every other allegation.

Further answering, defendant alleges that warrants were issued in payment of gasoline purchased by the department of public works for use by that department, and by other departments of the state, long before it was sold to the public, and that said department uses gasoline for purposes other than retail; that all vouchers for warrants were approved by the acting secretary of public works, acting secretary of finance, and governor; that there was nothing on such vouchers indicating that they were for the payment of gasoline sold at retail, or for what purpose it was used by the state.

The answer further states, as follows: "The defendant says further the equipment and material fund on which said warrants were drawn is a revolving fund; that no part of it is raised by taxation; that it is a fund derived almost entirely from the sale of equipment and material donated to the state of Nebraska by the United States government, and that if any gasoline purchased with money from said fund is sold at retail the proceeds of such sales are immediately turned back into said fund so that at no time is the fund depleted by the sale of any gasoline at retail."

The reply is a general denial.

It will be seen from the pleadings, as well as from evidence hereinafter quoted, that the majority opinion is wrong wherein it states: "There is no controversy as to facts." It is not admitted that the vouchers cover gasoline bought for retail purposes only, nor that they are for gasoline sold only at retail. It is not admitted that no appropriation was had covering these claims. It is not alleged by plaintiff

nor admitted by defendant that the gasoline station was established for the purpose of selling gasoline at retail. It is not admitted that this gasoline was purchased other than in the ordinary course of the state's business. It is not alleged that claimants seeking vouchers are those who had received vouchers, or those who would in the future receive vouchers, or would have knowledge of the purpose of the state in buying gasoline, and that the purpose was to retail the same. These vendors were, and are, without fault. Bad faith on their part is not even charged. Under the pleadings, evidence, and the law applicable, these vendors are entitled to the protection of this court, and are necessary parties to this action.

We shall now see what the evidence shows. Defendant Marsh, on behalf of plaintiff, after the usual preliminary questions, was interrogated as follows: "Q. Now, you are familiar with the fact that the state was purchasing and selling gasoline at retail, weren't you? A. I was never officially notified. The state was buying gasoline and had been for years and selling it to the different departments of the state. * * * Q. And you have other warrants for the payment of gasoline that has been purchased and sold by the state, have you not? A. No, sir; I have vouchers. Q. And you have vouchers ready for your signature? A. Presented to us. Q. And were it not for this injunction, it is a fact, is it not, that you would issue those vouchers? A. Yes, sir." On cross-examination he testified: "Q. They merely show that the vouchers were for so much gasoline, and each voucher is approved by the governor, is it? A. Yes, sir. Q. And by Mr. George Hall, the acting secretary of the department of finance, and by Mr. Cochran, the acting secretary of the department of public works? A. Yes, sir. * * * Q. And they are drawn on the material and equipment fund? A. Yes, sir. Q. Have you in prior years drawn warrants for vouchers drawn on this same material and equipment fund for gasoline? A. I have. * * * Q. The voucher is issued for gasoline? A. Yes, sir. * * * Q. Now, the material and equipment fund is a fund that the

Fischer v. Marsh.

state uses, is it not, to pay the purchase price of different
articles and supplies that different departments and also
counties require? A. It is a revolving fund and they use
it for different purposes. Q. And do you know whether
or not this money taken in for the sale of gasoline at retail
goes back into that fund? A. Yes; it is a revolving fund,
and not only has the fund been kept intact but a profit
returned for that which has been sold." The following
questions were asked this witness on redirect: "Q. Now,
Mr. Marsh, don't you know that the treasurer does report
the amount of sales, and has exhibited to you from time
to time the amount of sales and the amount of money real-
ized from the sale of gasoline by the state at retail? A.
Yes; I think they issue a daily receipt, I guess, for the
amount of money received, and probably mentions in there
what it is for. Q. Now, these warrants when drawn for
the payment of gasoline as purchased include the amount
of the cost of the gasoline so sold at retail, does it not?
A. Yes; I think so. Q. You know that fact when you issue
these warrants? A. Yes; I know that when received the
money was for the purchase of the gas."

Mr. J. R. Farris, then state purchasing agent, testified
as follows: "Q. When you purchase more or less in car-
load lots, or considerable quantities, is it purchased pri-
marily or solely for the sale at retail? A. As far as the
purchasing agent knows it is simply bought on the requisi-
tion of the department without any reference to what use is
made of it. Q. Do you know, Mr. Farris, whether or not
gasoline is used by the department of public works itself
and by other departments of the state government? A. It
has been customary for a long time for the department to
buy gasoline through this fund and sell it to the other
agencies of the state, so that the state would get all of its
gasoline at wholesale prices."

Mr. Hiss, superintendent of equipment, testified as fol-
lows: "Q. What do you do with the money which you
receive from the sale of gasoline at retail for the state?
A. Deposit it with the state treasurer. * * * Q. On that

Fischer v. Marsh.

deposit with the state treasurer is there anything showing to him that this is the proceeds of the sale of gasoline by the state at retail? A. We make a deposit slip, and I think in every case it is shown where the money is derived from. * * * Q. If you deposited $500 with the treasurer from the sale of gasoline you give him a slip showing so many gallons sold and the amount? A. That would be an item—that would be on the same sheet.

The following testimony is that of Mr. J. M. Davey, a bookkeeper in the state treasurer's office: "Q. Are you able to state in what funds they deposit that money? A. In the material and equipment fund; the money is thrown into the general fund and distributed on the fee ledger and then distributed. * * * Q. That is the fund from which the payment for gasoline is made by the state? A. Yes, sir. * * * Q. The equipment and material fund is a revolving fund? A. Yes, sir. Q. It is not raised by taxation? A. No, sir."

I submit that it is not shown that the gasoline for which the warrants in question were issued in payment was not purchased in the ordinary course of business. This burden was on the plaintiff and he did not meet it. Every presumption inures in behalf of the state's legally constituted authorities, and in behalf of legal and honest dealing. From the majority opinion, one is led to infer that the onus is on those selling gasoline to the state, who are not even parties to the suit.

The supreme executive power is vested in the governor, and by statute the departments of finance and public works are established to aid the governor. Section 7266, Comp. St. 1922, provides: "Each department shall have exclusive supervision, regulation, and general control over the enforcement, execution and administration of the laws relating to the several subjects and matters assigned in this act to the departments respectively." And section 8500, Comp. St. 1922, provides: "Wherever, by this act, any executive authority is vested in, or any duty imposed upon a department, the word 'department' or the words 'department of

finance' * * * or 'department of public works' shall be construed to mean the governor of the state." From the foregoing it will be seen that the governor and acting secretaries of finance and public works are necessary parties defendant. In *Century Oil Co. v. Department of Agriculture*, 110 Neb. 100, and *Century Oil Co. v. Department of Agriculture*, 112 Neb. 73, suits were brought to enjoin the secretary of agriculture from collecting certain fees, and the governor and oil inspector were joined with him as defendants.

The third paragraph of the syllabus of the majority opinion reads as follows: "There has been neither authorization for, nor appropriation of funds to permit of, the purchase of gasoline by the state or its officers for sale to the public, and warrants drawn to pay for gasoline so to be disposed of are unauthorized." This is answered by sections 35 and 38, ch. 28, Laws 1923. Section 35 provides: "The receipts for the biennium ending June 30, 1925, together with any unexpended balance on hand June 30, 1923, are hereby appropriated in the following revolving funds: * * * and state engineer's department, state equipment and material fund." Section 38 reads as follows: "All unexpended balances of funds herein appropriated, for any department or office when any reorganization plan adopted at this session becomes effective, are hereby appropriated to the respective departments which will administer or discharge the functions or duties now administered or discharged by the departments or officers for which appropriations are made by this act."

Thus, it will be seen that the word "receipts" used in the 1923 enactment includes proceeds from multitudes of transactions and sales, amounting to thousands of dollars yearly, sales necessary to be made of things purchased and repurchased and sold and resold to all other departments of the state, counties, and individuals, including gasoline, by the department of public works, from which the revolving fund is maintained. The majority opinion holding that the proceeds of such sales should be placed in the general

fund, not to be used again until an appropriation is made of such "receipts," annuls this legislative provision above quoted, and leaves the equipment and material fund a revolving fund which does not revolve.

It is admitted in the majority opinion that the state sold this gasoline at a profit. Yet this same opinion precludes the unpaid vendors of the gasoline from receiving any remuneration whatever for it. Before plaintiff is entitled to equity, he must do equity, and in order that he may do so, a finding should be had in favor of the vendor claimants to the extent of the fair market value of the oil received by the state. And having sold the gasoline at a profit, the price at which it was furnished is at least the fair market value, and each claimant is entitled to a warrant for that amount drawn on the equipment and material fund. In *Grand Island Gas Co. v. West*, 28 Neb. 852, we held that, although the contract was illegal, yet, "inasmuch as the city has accepted the benefits of the contract, it must do equity, and to do equity the city must pay to the Light & Fuel Company, not exceeding the contract price, * * * with 7 per cent. interest thereon." To the same effect, see *Clark v. Lancaster County*, 69 Neb. 717; *Stickel Lumber Co. v. City of Kearney*, 103 Neb. 637; *Miles v. Holt County*, 86 Neb. 238; *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70; *Nebraska Bitulithic Co. v. City of Omaha*, 84 Neb. 375.

Then, as hereinbefore stated, the record is without evidence showing, or tending to show, that the gasoline, payment for which the majority opinion enjoins, was purchased solely for sale, or was sold, at retail. On the other hand, the evidence does show that the state buys large quantities of gasoline for its own use.

It must be remembered that Auditor Marsh is the sole defendant in this case. It is an elementary rule in equity that all persons materially interested, either legally or beneficially, in the subject-matter of a suit should be made parties to it, so that all matters involved may be determined and all rights protected, and a decree entered meting out justice to all, thus avoiding a multiplicity of suits, instead

of giving rise to a multiplicity of suits. Each party to this suit, being a citizen, would be benefited by the state not paying the debt. The officers who know of the transaction, and are the moving factors, as well as those to whom the debt is owing, are not before the court. Their acts are being impugned, and evidence presented affecting their standing as men and as officers; the validity of the vendors' contracts are being determined, and yet they are not before the court. The parties necessary to a determination of questions directly involved must be present in a law action. The extraordinary remedy of injunction demands the presence of all who will be affected thereby. The majority opinion holds that the original purchase of the gasoline was for the purpose of sale at retail, and this without either vendor or purchaser being present.

In *Walrath v. Board of County Commissioners,* 18 N. M. 101, the court held: "Where a county has contracted with a party to construct a courthouse and jail, and a taxpayer seeks to enjoin the board of county commissioners from paying said contractor, * * * the contractor is an indispensable party to the suit, and where such contractor was not made a party, the court properly dismissed the petition." See, also, *Minnesota v. Northern Securities Co.,* 184 U. S. 199, 235; *State v. Anderson,* 5 Kan. 90; *Smith v. Crissey,* 66 How. Pr. (N. Y.) 112; *Hoppock v. Chambers,* 96 Mich. 509. Quoting from the last-cited case: "The contractor is a necessary party to a bill filed by taxpayers against the president, clerk, treasurer, and trustees of a village, to restrain the payment of moneys under a contract entered into by the village council for furnishing a water supply." In every case cited herein, as well as the case of *Woodruff v. Welton,* 70 Neb. 665, cited in the majority opinion, the contracting party to be affected by the injunction, if one were granted, was made a party defendant.

The judgment of the district court in dismissing the action at plaintiff's costs was right, and should be affirmed.