DONALD A. MARTIN, APPELLANT, v. CITY OF LINCOLN ET AL., APPELLEES.

53 N. W. 2d 923

Filed June 13, 1952. No. 33148.

*Louis B. Finkelstein,* and *Littrell & Patz,* for appellant.

*C. Russell Mattson* and *John H. Comstock,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action in equity by Donald A. Martin, plaintiff and appellant, against the City of Lincoln, a municipal corporation organized under the laws of Nebraska, Victor E. Anderson, Mayor, Fern Orme, John Comstock, Roy A. Sheaff, Thomas R. Pansing, Arthur J. Weaver, and Rees Wilkinson, members of the City Council, and Raymond Osborn, Director of the Department of Public Welfare and Safety of the City of Lincoln, defendants and appellees, to enjoin the defendants from entering into a contract with one M. H. Rhodes, Inc., for the purchase of certain parking meters and from expending public funds in payment of the purchase price of the meters. After the commencement of the action Chauncey W. D. Kinsey and Pat Ash were substituted as defendants for the defendants Pansing and Weaver.

The action was instituted by petition to which the defendants jointly and severally filed a demurrer. The demurrer contained four grounds as follows: (1) That

the court has no jurisdiction of the subject matter; (2) that the plaintiff has no legal capacity to sue; (3) that there is a defect of parties defendant; and (4) that the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the respective defendants or any of them.

The district court sustained the demurrer, whereupon the plaintiff elected to stand upon his petition. Judgment of dismissal was rendered and plaintiff has appealed therefrom.

The essential allegations of the petition are that the city of Lincoln is a city operating under a home-rule charter, and that the charter contains the following: "Before the City Council shall enter into any contract or authorize any expenditures involving over $500, they shall cause to be made and filed an estimate of the total costs thereof, together with detailed plans and specifications, * * * and the work or improvement shall be done substantially in accordance therewith. No contract shall be entered for a price exceeding such estimate, and the City Council shall, except in cases of emergency, advertise for bids and cause the amount of such estimate to be published therein. Such advertisement shall be published in some daily newspaper of general circulation in the city for at least 10 days * * *."

The city council caused to be made specifications for the purchase of 350 parking meters which were approved on January 26, 1951. The estimate of the cost of the meters was $28,000. Pursuant to the ordinance and in accordance with the approved specifications advertisement for bids was published. A considerable number of bids were received among which was that of M. H. Rhodes, Inc. The bid was $57.50 a meter or $20,125.

It was alleged that the meters did not conform to the specifications and were inferior in that, whereas the specifications called for meters the signals of which should be plainly visible from front and back of the

meter, those on the meters described in the bid were visible only on one side.

It was alleged that the purchase of and payment for these meters would result in an unlawful expenditure of the purchase price.

In the petition were pleaded certain ordinance provisions of the city which were in force at all times of concern in the action. Among these was the following from ordinance No. 4301, section 902, providing for exaction of fees from parking meters and defining the purpose and use to which the fees so exacted should be applied: "For the purpose of defraying the cost to the city of regulating, supervising and policing the exercise of the privilege of parking vehicles in, along, or upon the streets so designated by the Council, there is hereby imposed a fee, as hereinafter provided, upon each person parking a vehicle upon the streets so designated, between the hours of 9:00 A. M. and 6:00 P. M. of any day, except Sundays and legal holidays. * * *."

Also among these was article 9, section 909, of ordinance No. 4301 as follows: "The fees collected under this article shall not exceed the reasonable cost to the city of regulating, supervising and policing the exercise of the privilege of parking. All monies received from the operation of said parking meters, shall be deposited with the CITY TREASURER and by him placed to the credit of the POLICE DIVISION of the GENERAL FUND of the CITY."

The specifications upon which bids were requested were made a part of the petition. The following are provisions contained in the specifications:

"Section 2. CERTIFIED CHECK. Each bid must be accompanied by a certified check in the sum of five. (5) per cent of the total amount of the bid, made payable to the order of Frank J. Miller, City Treasurer, which will be retained by and forfeited to the City of Lincoln, as liquidated damages, if such bid is accepted and a contract is awarded and the bidder or bidders

fail to enter into a contract with the City and furnish satisfactory bond within ten (10) days after the date of such award."

"Section 5. CONTRACT AND BOND. The successful bidder or bidders will be required, within ten (10) days after the award of contract, to enter into and sign a contract with the City, and also furnish an approved surety company's bond in the sum of the full contract price, conditioned upon the faithful performance of all the terms and conditions of the contract."

"Section 20. BASIS OF PAYMENT. All bids shall be made with the understanding that the City will make payment for all meters purchased by making monthly remittances at the rate of one-half the average monthly receipts from such meters, such payments to continue until the meters are fully paid for."

On what ground or grounds the demurrer was sustained does not authentically appear, hence it becomes necessary to consider all of the grounds assigned, at least to the extent argued in the brief, since it was the plaintiff's petition that was stricken down by the ruling and judgment.

The first assignment has received no substantial consideration in the brief and it will be treated as having been abandoned by the defendants. Furthermore, on its face, it is clearly without merit. No citation to sustain this viewpoint is necessary.

The second and fourth assignments are in essence interrelated and will be considered together. The theory of the two is that the plaintiff as a citizen and taxpayer has no legal capacity to maintain an action to enjoin the acts complained of, hence the petition does not and could not contain sufficient allegations of fact to constitute a cause of action in his favor.

The substantial theory of the defendants is that the petition discloses that the plaintiff is a private citizen and taxpayer; that in his capacity as a citizen and taxpayer he has not shown any special injury to himself

independent of injury to the general public; that the alleged illegal expenditure is not of public funds raised for governmental purposes; and that the proposed expenditure would not increase the burden of taxation, therefore the petition shows that plaintiff has no legal capacity to sue, and in consequence does not state facts sufficient to constitute a cause of action.

It is an established principle in this jurisdiction that a person seeking equity to restrain an act of a municipal body must show some special injury peculiar to himself aside from and independent of the general injury to the public unless it entails an illegal expenditure of public funds or involves an illegal increase in the burden of municipal taxation. Kirby v. Omaha Bridge Commission, 127 Neb. 382, 255 N. W. 776. See, also, Miller v. Inc. Town of Milford, 224 Iowa 753, 276 N. W. 826, 114 A. L. R. 1423.

Another established principle, which is conceded by defendants, is that a resident taxpayer may invoke the interposition of a court of equity to prevent the illegal disposition of money of a municipal corporation or the illegal creation of a debt which he, in common with other property holders, may otherwise be compelled to pay. Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070; Woodruff v. Welton, 70 Neb. 665, 97 N. W. 1037; Fischer v. Marsh, 113 Neb. 153, 202 N. W. 422; Davenport v. Kleinschmidt, 6 Mont. 502, 13 P. 249, 8 Mont. 467, 20 P. 823.

Another principle is that a resident taxpayer without showing any interest or injury peculiar to himself may bring an action to enjoin the illegal expenditure of public funds raised for governmental purposes. Woodruff v. Welton, *supra;* Fischer v. Marsh, *supra;* Noble v. City of Lincoln, 153 Neb. 79, 43 N. W. 2d 578; Miller v. Inc. Town of Milford, *supra.*

The decision upon these two grounds of demurrer depends upon an application of these principles to the allegations of fact contained in the petition.

The allegations of fact contained in the petition must be taken as true under the rule that a general demurrer admits the truth of all alleged material facts and the reasonable inferences to be drawn therefrom. Central Nebraska P. P. & I. Dist. v. Walston, 140 Neb. 190, 299 N. W. 609; City of Grand Island v. Willis, 142 Neb. 686, 7 N. W. 2d 457; In re Estate of Halstead, 154 Neb. 31, 46 N. W. 2d 779.

It follows therefore that for the purpose of this review it must be said that the contract which the city proposes to let to M. H. Rhodes, Inc., is an illegal one in that the meters involved are inferior and do not conform to the requirements of the specifications.

This being true it becomes necessary to decide within the meaning of the legal principles announced whether or not the plaintiff herein may maintain the action. If this proposed contract calls for the expenditure of public funds raised for governmental purposes then the right of the plaintiff to maintain the action may not properly be denied.

We are convinced that the petition discloses conclusively that this proposed contract would be a charge against public funds raised and to be raised for governmental purposes.

The ordinances quoted disclose in specific and unambiguous terms that the fees from all parking meters, including these if they are allowed to be installed, are to be collected and allocated to policing which is a governmental purpose and function.

The defendants arguendo say that this is not true as to these. In support of their argument the defendants rely on section 20 of the specifications which has been quoted. They say that this provision requires that payment shall be made out of the avails of these meters. The provision may not be so interpreted, first because the ordinance does not permit it, and second, the specifications do not so provide. It furnishes a measure only of the city's monthly obligation against its funds. The ob-

ligation is the equivalent of one-half of the monthly receipts but not one-half of the receipts.

The distinction is real and not fanciful. By way of illustration, it is well known that funds may be and frequently are lost or stolen or for other reasons never reach their proper repository. If that should happen for any day or month it could not well be said that to that or to any extent would the monthly obligation of the city be reduced.

The remaining ground of demurrer to be discussed is that there is a defect of parties defendant. As the basis for this the defendants urge that M. H. Rhodes, Inc., being the bidder to which it was proposed to let the contract, was a necessary party defendant.

Examination discloses that the cases cited in support of the defendants' theory that M. H. Rhodes, Inc., was a necessary party relate to situations where a municipality has entered into a contract with a third party. None of them deals with a situation such as here where according to the petition no contract has been entered into. There was a bid which was approved but sections 2 and 5 of the specifications make clear that no contractual relation did or could exist unless and until a contract was signed and a performance bond furnished. The authorities are therefore not in point.

It has been held that in an action by a taxpayer to enjoin municipal authorities from making illegal purchases the seller is not a necessary party. Johnson v. Farley, 8 Ohio N. P. 498; City Water Supply Co. v. City of Ottumwa, 120 F. 309; Williams v. Klemmer, 177 Minn. 44, 224 N. W. 261; Davenport v. Kleinschmidt, *supra.*

We conclude therefore that the demurrer was improperly sustained. The judgment of the district court is therefore reversed and the cause remanded with directions to overrule the demurrer.

REVERSED AND REMANDED WITH DIRECTIONS.