WILLIAM NIKLAUS, FOR THE BENEFIT AND ON THE BEHALF OF THE CITY OF LINCOLN, NEBRASKA, A BODY POLITIC AND THE TAXPAYERS AND RESIDENTS OF SAID CITY, APPELLANT, V. FRANK J. MILLER, TREASURER OF THE CITY OF LINCOLN, APPELLEE.

66 N. W. 2d 824

Filed November 12, 1954. No. 33563.

*Herbert W. Baird,* for appellant.

*John H. Comstock* and *Jack M. Pace,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Lancaster County. William Niklaus, as a resident, citizen, and taxpayer of the city of Lincoln brought the action against the city's treasurer, Frank J. Miller. The purpose of the action is to enjoin the treasurer of the city from making payments to anyone under and by virtue of a contract entered into by the city with Dobson Brothers Construction Company. Trial was had which resulted in the action being dismissed. Plaintiff thereupon filed a motion for new trial and has perfected this appeal from the overruling thereof.

This action relates to a written contract entered into on October 21, 1953, by the City of Lincoln with Dobson Brothers Construction Company whereby the latter agreed to construct a 5,000,000 gallon reservoir at the city's Fifty-first Street pumping station at a cost to the city of $246,746. The city engineer's estimate of the cost of the work was $313,200.

The first question raised is, can appellant, solely as a citizen, resident, and taxpayer of the city of Lincoln, maintain this action? The contract involved created a general obligation on the part of the city in the sum

of $246,746 which amount it agreed it would pay in cash to Dobson Brothers Construction Company upon their completion and the city's acceptance of the work, payment to be made in accordance with the provisions of the contract.

We have often held that: "* * * in this jurisdiction the law has long been settled beyond debate that a resident taxpayer, as such, and without proof of peculiar interest or injury to himself, may enjoin the illegal expenditure of money by a public board or officer." Woodruff v. Welton, 70 Neb. 665, 97 N. W. 1037. See, also, Martin v. City of Lincoln, 155 Neb. 845, 53 N. W. 2d 923; Fischer v. Marsh, 113 Neb. 153, 202 N. W. 422; Tukey v. City of Omaha, 54 Neb. 370, 74 N. W. 613, 69 Am. S. R. 711; McElhinney v. City of Superior, 32 Neb. 744, 49 N. W. 705.

These cases rest on the sound principle that each taxpayer has such an individual and common interest in public funds as to entitle him to maintain an action to prevent their unauthorized appropriation. We find appellant can maintain the action.

In his petition appellant alleged Clark Jeary, Mayor of the city of Lincoln at the time the contract was entered into, had such an interest in the Universal Surety Company as a director, stockholder, and employee thereof, and in the Dobson Brothers Construction Company as a regular employee thereof, that his interest in the contract was a violation of Article VII, section 3, of the Home Rule Charter of the city of Lincoln. It should here be stated that the Universal Surety Company furnished the "Performance Bond" for the Dobson Brothers Construction Company as required by the city's "Instructions to Bidders."

Article VII, section 3, of the city's Home Rule Charter provides, insofar as here material, as follows: "No officer of the city shall be interested directly or indirectly in any contract to which the city or anyone for its benefit is a party; and such interest in any con-

tract shall avoid the obligation thereof on the part of the city."

This issue seems to have been abandoned on appeal. However, in fairness to the mayor and the other members of the city council, we think it only right to state the appellant produced no evidence to sustain this charge. It is entirely without merit.

Should the specifications for competitive bidding have specified the time within which the work must be completed, since time was of vital importance? In this respect the Instructions to Bidders provided: *"TIME OF COMPLETION.* The time of completion of the work is a basic consideration of the contract and the construction period named in the proposal will be taken into consideration in making, the award of contract."

Nothing is pointed out in the provisions of the city's charter which would specifically so require and, in the absence thereof, the following, quoted from Best v. City of Omaha, 138 Neb. 325, 293 N. W. 116, would seem to be controlling: "The city council may, therefore, determine which course is for the best interest of its municipality, and, if it so desires, permit bids to be proposed in which the bidder fixes the time for completion. This permits the city council to consider the time of completion in conjunction with and as a part of the other elements that enter into the determination of who is the lowest responsible bidder."

Appellant contends the contract was not let to either the "lowest responsible bidder" or the "lowest and best bid" for the work.

Nine bids were received, all of which were below the city engineer's estimate of $313,200. The lowest bid was that of Roberts Construction Company of $242,-469 with completion in 270 days or late in August 1954. The next lowest bid was that of Dobson Brothers Construction Company of $246,746 with completion in 200 days or the early part of June 1954.

Because Dobson Brothers Construction Company had

their equipment and men available for immediate use, because their foreman was experienced in this exact type of work, and because their completion date would make the reservoir available for use during the peak period of the 1954 summer season, the city council, by resolution No. A-37247 adopted on October 21, 1953, accepted the proposed bid of Dobson Brothers Construction Company and authorized the mayor to enter into a contract in accordance therewith. The mayor did and it is the contract herein involved.

Article IV, section 19, of the city's Home Rule Charter provides, in part, as follows: "Before the city council shall enter into any contract or authorize any expenditures involving over $500.00, they shall cause to be made and filed an estimate of the total cost thereof, together with detailed plans and specifications, which, if approved by the city council, shall be kept subject to public inspection and the work or improvement shall be done substantially in accordance therewith. No contract shall be entered for a price exceeding such estimate, and the city council shall, except in cases of emergency, advertise for bids and cause the amount of such estimate to be published therein."

A fair construction of this provision would impose a duty upon the council to accept the lowest bid in the absence of facts which, in the honest exercise of its discretion, would cause it to conclude that a contrary course would be in the best interests of the city.

As stated in State ex rel. Nebraska B. & I. Co. v. Board of Commissioners, 105 Neb. 570, 181 N. W. 530: "The tribunals having charge of the letting of these contracts for public work in passing upon the question of the responsibility of bidders, as determined from all those elements entering into that question, do not act ministerially only, but exercise an offical discretion. The action of the board in that respect is judicial in its nature, and the exercise of that discretion is vested in the board, and not in the courts." See, also, State ex

rel. Union Fuel Co. v. City of Lincoln, 68 Neb. 597, 94 N. W. 719.

The following principles in this regard were laid down in Best v. City of Omaha, *supra:*

"Public administrative bodies possess a discretionary power in awarding contracts, in considering the responsibility of bidders, and in determining questions of public advantage and welfare.

"Where there is a showing that the administrative body, in exercising its judgment, acts from honest convictions, based upon facts, and as it believes for the best interests of its municipality, and where there is no showing that the body acts arbitrarily, or from favoritism, ill will, fraud, collusion, or other such motives, it is not the province of a court to interfere and substitute its judgment for that of the administrative body.

"It is presumed that a public administrative body acts in good faith, with honest motives, and for the purpose of promoting the public good and protecting the public interest.

"It is not the policy of the law to prevent a public administrative body from properly exercising its discretion in administering the affairs committed to its charge for the best interests of the municipality that it represents.

"In the absence of controlling legislative or judicial direction, when acting within the limits of the general powers which it possesses, a public administrative body has the power to determine questions of public policy that concern primarily its municipality."

There was a further question as to the propriety of the council considering the bid of Roberts Construction Company. Roberts Construction Company had interlocking ownership and management with the Olson Construction Company, who had also bid and was third low. It appears the Olson Construction Company had the right to dictate to the Roberts Construction Company the amount of its bid.

In its Instruction to Bidders the city provided as follows: *"ONLY ONE PROPOSAL.* No bidder may submit more than one (1) proposal. Two proposals under different names will not be received from one firm or association."

The record shows the council, in exercising its judgment in regard to the bids made, acted upon honest convictions, based upon the facts which were before it. It believed the action it took was for the best interests of the city. There is no showing that the council acted arbitrarily, or from favoritism, ill will, fraud, collusion, or any other such motives. In this situation it is not the province of this court to interfere and substitute its judgment for that of the council.

Appellant further raises the following questions: Do the provisions of sections 73-101 to 73-105, R. R. S. 1943, apply to contracts for the construction of public improvements entered into by the city of Lincoln? If they do, are such provisions directory or mandatory? If mandatory, is the contract entered into by the city in violation thereof void?

These questions were not raised by appellant's pleadings filed in the district court. They were, however, orally raised by appellant at the opening of the trial and passed on by the trial court. In view thereof we shall consider them to be here for our determination.

Section 73-102, R. R. S. 1943, insofar as here material, provides: "All governing authorities of the State of Nebraska, and governmental subdivisions thereof, * * * shall, in awarding contracts for public works, require all contractors bidding on public works to file with such authority a statement that he is complying with, and will continue to comply with, fair labor standards in the pursuit of his business and in the execution of the contract on which he is bidding. The governing authorities shall also require to be written into each and every contract for public works, in addition to such other provisions as are necessary and prescribed by law, a provision

that in the execution of such contract fair labor standards shall be maintained; * * *."

Section 73-104, R. R. S. 1943, provides: "'Fair labor standards,' as used in sections 73-102 and 73-103 shall be construed to mean such a scale of wages and conditions of employment as are paid and maintained by at least fifty per cent of the contractors in the same business or field of endeavor as the contractor filing such statement."

Section 73-105, R. R. S. 1943, provides, insofar as here material, that: "Any person violating any of the provisions of sections 73-101 to 73-104 shall likewise be subject to a fine of not less than twenty-five dollars nor more than two hundred and fifty dollars."

The statute, taken as a whole, is on its face, a general law and of state-wide application. It is the appellant's thought, because of the penalty provided therein for any violation of the provisions thereof, that a contract founded on such violation is void even though the act does not pronounce it to be such. He cites Berka v. Woodward, 125 Cal. 119, 57 P. 777, 73 Am. S. R. 31, 45 L. R. A. 420, and Ferle v. City of Lansing, 189 Mich. 501, 155 N. W. 591, in support thereof.

The city of Lincoln is a city of the primary class operating under a home rule charter adopted pursuant to the powers granted it by the Nebraska Constitution. Under our Constitution a home rule charter must be consistent with and subject to the Constitution and laws of this state. This means that a provision of a city home rule charter takes precedence over state statutes only in instances where the subject matter is of strictly local municipal concern. As to all subjects of strictly local municipal concern such charter cities operate free and independent of state legislation. See, Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894; Carlberg v. Metcalfe, 120 Neb. 481, 234 N. W. 87; Salsbury v. City of Lincoln, 117 Neb. 465, 220 N. W. 827;

Consumers Coal Co. v. City of Lincoln, 109 Neb. 51, 189 N. W. 643.

As stated in Axberg v. City of Lincoln, *supra:* "The purpose of the home rule charter provision of the Constitution was to render the cities adopting such charter provisions as nearly independent of state legislation as was possible. Under it a city may provide for the exercise of every power connected with the proper and efficient government of the municipality where the legislature has not entered the field. Where the legislature has enacted a law affecting municipal affairs, but which is also of state concern, the law takes precedence over any municipal action taken under the home rule charter. But where the legislative act deals with a strictly local municipal concern, it can have no application to a city which has adopted a home rule charter. Whether or not an act of the legislature pertains to a matter of local or state-wide concern becomes a question for the courts when a conflict of authority arises."

We said, and correctly, in Pester v. City of Lincoln, 127 Neb. 440, 255 N. W. 923, that: "The extension of the water main * * * were matters of local and municipal concern. Consequently the home rule charter prevails over the statute applying to cities and villages generally. Consumers Coal Co. v. City of Lincoln, 109 Neb. 51; Sandell v. City of Omaha, 115 Neb. 861; State v. Johnson, 117 Neb. 301; Salsbury v. City of Lincoln, 117 Neb. 465." The same would be true here where the construction of a reservoir is involved. The statute as to "Fair Labor Standards" has no application to the subject matter herein involved.

But even assuming, for the purpose of discussion, that the statutory provisions have application, we do not think appellant's contentions should be sustained. The statute, section 73-102, R. R. S. 1943, makes two requirements: (a) That when a contractor bids on public works the governmental subdivision shall, before awarding a contract therefor, require him to file with it a state-

ment to the effect that he is complying with, and will continue to comply with, fair labor standards in the pursuit of his business and in the execution of the contract on which he is bidding; and (b) that such governing authorities shall also require to be written into each and every contract for public works a provision that in the execution of such contract fair labor standards shall be maintained.

The burden of proof was on the appellant to establish the statute had not been complied with. He offered no proof that the first requirement was not complied with. In the absence of such proof it must be presumed the public officials performed their duty. As stated in Campbell Co. v. City of Harvard, 123 Neb. 539, 243 N. W. 653: "In absence of evidence showing misconduct or disregard of law, regularity of official acts is presumed."

As to the second requirement no such express language is found in the contract. However, we have often said: "It is well established that the law of the state in which a contract is made and is to be performed is considered as written into and becomes a part of and governs the contract; * * *." Watts v. Long, 116 Neb. 656, 218 N. W. 410, 59 A. L. R. 728. See McWilliams v. Griffin, 132 Neb. 753, 273 N. W. 209, 110 A. L. R. 1039.

Not only does the law so provide but the contract contains the following: "*LAWS AND ORDINANCES.* The contractor shall keep himself full informed of all existing and current regulations of the Owner, and County, State, and National Laws which in any way limit or control the actions or operations of those engaged upon the work, or affecting the materials supplied to or by them. He shall at all times observe and comply with all ordinances, laws, and regulations, and shall protect and indemnify the Owner and the Owner's officers and agents against any claims or liability arising from or based on any violation of the same."

By this provision the city has guaranteed the fulfill-

ment of both the spirit and the letter of every statute affecting the contract as effectually as it would have been done had the provision of the statute been expressly followed. Under the circumstances here presented, this being in the nature of a collateral attack, we do not find the contract to be void.

There are other issues raised in regard to this last question which are not entirely without merit but, in view of our holdings, need not be determined. We find the action of the trial court dismissing the action to be correct. It is therefore affirmed.

AFFIRMED.